**UNITED STATES of America,**
**Appellant,**

v.

**STOCKS LINCOLN-MERCURY, INC.,**
**Appellee.**

**No. 6843.**

United States Court of Appeals
Tenth Circuit.

July 2, 1962.

David L. Rose, Atty., Dept. of Justice (William H. Orrick, Jr., Asst. Atty. Gen., William T. Thurman, U. S. Atty., and John G. Laughlin, Atty., Dept. of Justice, on the brief), for the United States.

Mark K. Boyle, Salt Lake City, Utah, for appellee.

Before PHILLIPS, PICKETT and LEWIS, Circuit Judges.

PHILLIPS, Circuit Judge.

On July 22, 1958, Stocks Lincoln-Mercury, Inc.,[1] a Utah corporation, was awarded a contract by the United States for furnishing certain motor vehicle parts, materials, supplies and services.

The contract contained the representations and stipulations required by the Walsh-Healey Public Contracts Act, 49 Stat. 2036, 41 U.S.C.A. §§ 35–45.

The United States brought this action against Stocks to recover as liquidated damages an amount alleged to be due by reason of the alleged failure of Stocks to pay overtime pay due its employees engaged in the performance of such contract, as required by the Walsh-Healey Act and the regulations promulgated thereunder.

Theretofore, an administrative complaint had been filed against Stocks by the Under Secretary of Labor, charging violation of the overtime pay provisions of § 6 of the Walsh-Healey Act and the regulations promulgated thereunder. At the administrative hearing Stocks admitted it had not paid time and one-half due its employees engaged in the performance of such contract, but asserted as a defense to the claim that the con-tract was one for services and therefore was not covered by the Walsh-Healey Act, as construed by § 16(a) of Rulings and Interpretations No. 3, issued by the Administrator of the Wage and Hour and Public Contracts Divisions, United States Department of Labor, and in the alternative that its failure to comply with such Act was in good faith and in conformity with and in reliance on a ruling or interpretation of an agency of the United States, specified in subsection (b) (2) of § 10 of the Portal to Portal Act of 1947, 61 Stat. 84, 29 U.S.C.A. § 251 et seq. The administrative complaint was heard by a hearing examiner. After a full hearing, the examiner entered an order that Stocks pay the United States $4,-690.62, as liquidated damages.

Upon Stocks's petition for review, the Administrator of the Wage and Hour and Public Contracts Divisions of the Department of Labor affirmed the examiner's findings and order. In the instant action, Stocks asserted the same defenses it had asserted in the administrative hearing. The United States moved for summary judgment, based on the pleadings and the certified record of the administrative hearing. Following a hearing thereon, the trial court denied the motion and entered an order dismissing the action. The United States has appealed.

The facts disclosed by the pleadings and the administrative proceedings record are these:

In July, 1958, Stocks entered into negotiations with the Air Force with respect to a contract for the general maintenance of automobiles, station wagons and trucks operated by the Air Force at Hill Air Force Base, near Salt Lake City, Utah, and the furnishing of plant facilities, equipment, labor, replacement parts, materials and supplies required to accomplish the work. In such negotiations the Air Force was represented by Solomon Kasarsky and Stocks by R. J. Krone, who was then its General Manager.

In the course of the negotiations and before the contract was awarded, a meet-

---

1. Hereinafter called Stocks.

ing took place at which Krone, Kasarsky and Frank J. Vause, contracting officer of the Air Force, were present. During that meeting the applicability of the Walsh-Healey Act to the proposed Stocks contract was discussed and Kasarsky advised Krone that the Department of Labor had determined that the Walsh-Healey Act did not apply to an earlier contract between the Air Force and the Preece Motor Company for the maintenance of the automotive equipment of the Air Force by Preece. The terms of the Preece contract were not materially different from the proposed Stocks contract. Kasarsky based such advice on a letter dated April 22, 1958, written to counsel for Preece by the Salt Lake City Field Office Supervisor of the Wage and Hour and Public Contracts Divisions of the Department of Labor. Such letter reads:

"This is to confirm Mr. Adams' recent conversation with you relative to the application of the Walsh-Healey Public Contracts Act to the operations of Preece Motor Company under contracts with the Hill Air Force Base.

"Our study made relative to the performance on the contracts already awarded indicates that they fall within the definition of service contracts under Section 16(a) of Rulings and Interpretations No. 3, a copy enclosed, and are not subject to the Act.

"If questions arise on future contracts awarded, you might wish to correspond with Acting Regional Director G. J. Mitchell, 630 Sansome Street, San Francisco 11, California.
"Very truly yours,
/s/ Donal D. Drew
DONALD D. DREW
Field Office Supervisor"

There was introduced as an exhibit in the administrative hearing a letter dated February 14, 1958, addressed to John R. Dille, Regional Director, U. S. Department of Labor, Wage and Hour and Public Contracts Division, San Francisco, California, and signed by counsel for the Preece Motor Company, in which it was claimed that the Preece contract was not covered by the Walsh-Healey Act and in which certain "references" were set forth in support of that claim.

Counsel for Stocks states in his brief, "It was stipulated that this letter (the letter of February 14, 1958) was in answer to a formal request submitted to the Regional Director of the United States Department of Labor, Wage and Hour Public Contracts Division, San Francisco, California," a factual assumption apparently made by the trial court. The record does not support the statement made in the brief. At the inception of the administrative hearing, counsel for Preece asked counsel for the Department of Labor if he would stipulate "that pursuant to a complaint filed by the government, I contacted the local supervisor, then Mr. John M. Ekeberg, and *submitted certain letters and references to him,* and Mr. John R. Dille, Regional Director, U. S. Department of Labor, Wage and Hour and Public Contracts Division, at San Francisco, California; that pursuant to such communication I was advised on April 22, 1958 by letter signed by Mr. Drew, Field Office Supervisor, that the service contract was not subject to the Act." To that, counsel for the Department of Labor stated: "I will stipulate to the correspondence to which you have referred, and I believe under such a stipulation that the correspondence might well go into the record as evidence in this proceeding." (Emphasis supplied.)

The record makes it abundantly clear that counsel for Stocks was referring to the letter of February 14, 1958, and since it states that he "submitted certain letters" to Ekeberg and to Dille, it is a reasonable construction of his statement that one copy of the letter of February 14, 1958, was delivered to Ekeberg and one was transmitted to Dille. There is nothing in the stipulation to warrant the factual conclusion that the letter of April 22, 1958, signed by Drew as "Field Office Supervisor," was sent at the direction of Dille or in his behalf. We think

it clear that counsel for the Department of Labor did not intend to stipulate and did not in fact stipulate that the letter of April 22, 1958, was sent at Dille's direction or in his behalf. On its face, the letter of April 22, 1958, does not purport to be anything more than a letter from the Field Office Supervisor at Salt Lake City. It refers to Mr. Adams, who was an investigator for the local field office. There is nothing in the letter to indicate that the phrase "our study" appearing therein referred to a study by Drew and the Regional Director. On the contrary, the reasonable deduction from the context of the letter is that it refers to a study by Drew and Adams. There is nothing in the letter from which it could be reasonably inferred that it was written pursuant to instructions from the Regional Director or in his behalf. Accordingly, we conclude that on this record it cannot be said that the letter of April 22, 1958, was a response by the Regional Director to the letter of February 14, 1958, or a ruling or interpretation by such Regional Director. Moreover, as we shall more fully hereinafter show, the Regional Director was without authority to issue rulings or interpretations on the Walsh-Healey Act and the regulations promulgated thereunder and therefore the presumption is that he did not undertake so to do.

In the course of its performance of such contract, Stocks required and permitted certain of its employees engaged in the performance of such contract to work in excess of eight hours per day and 40 hours per week and paid such employees only their basic hourly rate of pay for overtime, rather than the one and one-half times the basic rate of pay required by the Walsh-Healey Act and regulations promulgated thereunder.

On February 28, 1959, Mr. Krone's employment by Stocks terminated and he was succeeded as General Manager by Don Richards, who continued the conditions of employment and basis of pay set up by Mr. Krone. There was no other evidence of a reliance by Stocks on the alleged ruling or interpretation.

The hearing examiner found that a study of approximately one-half of the work order invoices under the Stocks contract selected at random, aggregating $34,585.90, showed $20,263.90 charged for parts and materials and $14,322 charged for labor and that approximately 58 per cent of the total amount paid to Stocks under the contract represented charges for parts and materials and 42 per cent represented charges for labor.

Moreover, it was stipulated by the parties in the administrative hearing that approximately 58 per cent of the dollar amount paid by the United States under the contract was charges for parts and supplies and 42 per cent was charges for labor.

The hearing examiner concluded that the Stocks contract was one for furnishing of parts and materials and was covered by the Walsh-Healey Act and that the letter of April 22, 1958, was a ruling or finding by a field supervisor and was not the ruling of an "agency of the United States" specified in § 10(b) (2) of the Portal to Portal Act.

The Walsh-Healey Act, 49 Stat. 2036, 41 U.S.C.A. §§ 35–45, provides in part as follows:

"* * * in any contract made and entered into by any executive department, independent establishment, or other agency or instrumentality of the United States, * * * for the manufacture or furnishing of materials, supplies, articles, and equipment in any amount exceeding $10,000, there shall be included the following representations and stipulations:

* * * * * *

"(c) That no person employed by the contractor * * * shall be permitted to work in excess of eight hours in any one day or in excess of forty hours in any one week: * * *."

Section 2 of such Act provides that in the event of a breach of the representations and stipulations required under § 1, supra, the employer shall be liable to the

United States for liquidated damages which may be recovered in a suit brought by the Attorney General.

"SEC. 4. The Secretary of Labor is hereby authorized and directed to administer the provisions of this Act and to utilize such Federal officers and employees and, with the consent of the State, such State and local officers and employees as he may find necessary to assist in the administration of this Act and to prescribe rules and regulations with respect thereto. * * *."

Section 6 of such Act provides that the Secretary of Labor may allow reasonable variations from any or all provisions of the Act, but in the event the Secretary permits an increase in the maximum hours of labor stipulated he shall set a rate of pay of not less than one and one-half times the basic hourly rate of pay.

## I

### *The Alleged Agency Ruling— Reliance Thereon*

On May 14, 1947, Congress enacted the Portal to Portal Act, 61 Stat. 84, 29 U.S. C.A. § 251 et seq., to relieve employees and contractors from inequities that had arisen by reason of administrative and judicial construction of the Fair Labor Standards Act, the Walsh-Healey Act and the Bacon-Davis Act. Among other provisions, the Act contained a section designed to protect employers who relied in good faith upon an administrative ruling or interpretation of the agency of the United States specified in subsection (b) of § 10 of the Act. That section reads in part as follows:

"SEC. 10.  RELIANCE IN FUTURE ON ADMINISTRATIVE RULINGS, ETC.—

"(a) In any action or proceeding based on any act or omission on or after the date of the enactment of this Act, no employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay minimum wages or overtime compensation under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, or the Bacon-Davis Act, if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of the agency of the United States specified in subsection (b) of this section, or any administrative practice or enforcement policy of such agency with respect to the class of employers to which he belonged. * * *

"(b) The agency referred to in subsection (a) shall be—

"(1) in the case of the Fair Labor Standards Act of 1938, as amended —the Administrator of the Wage and Hour Division of the Department of Labor;

"(2) in the case of the Walsh-Healey Act—the Secretary of Labor, or any Federal officer utilized by him in the administration of such Act; and

"(3) in the case of the Bacon-Davis Act—the Secretary of Labor."

Section 10(b) (1) of the Portal to Portal Act provides that the "agency of the United States" whose rulings may be relied upon in the case of the Fair Labor Standards Act of 1938 is the Administrator of the Wage and Hour Division of the Department of Labor. Such Administrator is the person designated by statute to administer the Fair Labor Standards Act of 1938, 52 Stat. 1060, 29 U.S.C.A. § 201 et seq.

Section 10(b) (3) of the Portal to Portal Act provides that the "agency of the United States" whose rulings may be relied upon in the case of the Bacon-Davis Act is the Secretary of Labor. The Secretary of Labor is the person designated by statute to carry out the provisions of the Bacon-Davis Act (49 Stat. 1011, 40 U.S.C.A. §§ 276a, 276a–5).

Section 10(b) (2) of the Portal to Portal Act provides that the "agency of the United States" whose rulings may be relied upon in the case of the Walsh-Healey Act is "the Secretary of Labor, or any Federal officer utilized by him in the administration of such Act." This language is similar to the language used in the Walsh-Healey Act in designating who is to administer its provisions (49 Stat. 2036, 41 U.S.C.A. § 38).

Congress used the general language in describing the agency in § 10(b) (2), because the Walsh-Healey Act did not designate a specific agency or official to whom the Secretary of Labor might delegate the duty of carrying out the provisions of that Act.

■ If paragraphs (1), (2) and (3) of subsection (b) of § 10 of the Portal to Portal Act are to be given a uniform construction, then the agency contemplated in each is the official vested with primary or final authority to administer the provisions of the particular Act in question, not a minor official in such agency.

That construction comports with the Congressional intent, manifested by the debates when the Bill was before the House and Senate;[2] by a floor amendment explained and adopted in the Senate[3] and particularly by the language of the Conference Report on the Bill, which in part reads:[4]

"It should also be noted that under both sections 9 and 10 the regulations, interpretations, enforcement policies, etc., which may be in good faith relied on must be those of an 'agency' and not of an individual officer or employee of the agency. Thus if inspector A tells the employer that the agency interpretation is that the employer is not subject to the Act, the employer is not relieved from liability, despite his reliance in good faith on such interpretation, unless it is in fact the interpretation of the agency."

■ The Secretary of Labor, pursuant to the authority given him by the Walsh-Healey Act (49 Stat. 2036, 41 U.S.C.A. § 38), in General Order No. 25, dated December 12, 1946, designated the Administrator of the Wage and Hour and Public Contracts Divisions as the person to administer the Walsh-Healey Act and gave him the authority to issue rulings and interpretations, on the advice of the Solicitor, with respect to the Act and regulations thereunder.[5]

Counsel have not called to our attention and we have not found any further express or implied delegation, either by the Secretary of Labor or the Administrator of the Wage and Hour and Public Contracts Divisions, of authority to issue rulings and interpretations with respect to the Walsh-Healey Act and the regulations made thereunder and such General Order plainly indicates that authoritative rulings and interpretations should be made only on the advice of the Solicitor.

Accompanying Drew's letter of April 22, 1958, was a copy of the Walsh-Healey Public Contracts Act Rulings and In-

2. 93 C.R. 1562–1564; Id. 2185–2186; Id. 4388–4389; Id. 4270.

3. 93 C.R. 2186; Id. 2239–2241.

4. 93 C.R. 4387.

5. General Order No. 25, supra, in part reads:
"2. The following duties and functions of the Secretary of Labor relating to administration and enforcement of the Public Contracts Act are delegated to the Administrator of the Wage and Hour and Public Contracts Divisions:
\* \* \* \* \*

"(c) To issue rulings and interpretations, on the advice of the Solicitor, with respect to the Act and regulations thereunder; to authorize and institute investigations and to prosecute any inquiry with respect to charges of violation of the Act; to conduct hearings and issue orders to compel the attendance and testimony of witnesses or the production of documents or to apply for such an order from a court; and to make findings of fact and final and binding decisions necessary to carry out the provisions of this Act."

terpretations No. 3, which contains an introductory statement reading in part as follows:

"＊＊＊ This pamphlet is the only official compilation of interpretative material on this Act. Any amendments or additions will be given the widest possible distribution.

"Requests for rulings and interpretations covering definite points should be submitted to the Administrator, Wage and Hour and Public Contracts Divisions, United States Department of Labor, Fourteenth Street and Constitution Avenue, N. W., Washington 25, D. C. In addition to the national office, the Divisions maintain regional and territorial offices from which information may be obtained."

This clearly indicates that regional and field offices were not authorized to issue rulings and interpretations.

We conclude that Drew, as Field Office Supervisor, did not have authority to issue an authoritative ruling or decision with respect to the Walsh-Healey Act or regulations promulgated thereunder and was not an "agency of the United States" specified in § 10(b) (2).

The Government contends that there was no proof of reliance by Stocks on the Drew letter. We deem it unnecessary to pass on that issue.

## II

### Coverage

 The Walsh-Healey Act is expressly applicable to contracts for the "furnishing of materials, supplies, articles and equipment," but makes no reference to contracts for services. Section 16(a) of Rulings and Interpretations No. 3, issued by the Administrator of the Wage and Hour and Public Contracts Divisions, provides as follows:

"A contract *exclusively* for services is not covered by the Act; however, a contract in which services are incidental to or are *an integral part* of the manufacture or furnishing of materials, supplies, articles, or equipment is subject to the Act." (Emphasis supplied.)

The Stocks contract obviously requires both the furnishing of materials, supplies and articles and the performance of services and the charges made under the contract for materials, supplies and articles are substantially greater than the charges made for services. Hence, it cannot be said that it was a "contract exclusively for services." Neither can it be said that it was primarily a contract for services. On the contrary, it is "a contract in which services ＊＊＊ are an integral part of the ＊＊＊ furnishing of materials."

We agree with the interpretation of the Administrator and conclude that the Stocks contract was covered by the Walsh-Healey Act.

The judgment of the trial court is reversed, with instructions to enter a summary judgment for the United States.