**James D. HODGSON, Secretary of Labor, United States Department of Labor, Plaintiff-Appellee and Cross-Appellant,**

**v.**

**SQUARE D COMPANY, a corporation, Defendant-Appellant and Cross-Appellee.**

**Nos. 71–1231, 71–1232.**

United States Court of Appeals, Sixth Circuit.

May 9, 1972.

Herbert P. Wiedemann, Milwaukee, Wis., for Square D Co.; John W. Brahm, Milwaukee, Wis., on brief.

Bessie Margolin, Dept. of Labor, Washington, D. C., and Marvin Tincher, Dept. of Labor, Nashville, Tenn., for James D. Hodgson; Peter G. Nash, Sol.

of Labor, Bessie Margolin, Associate Sol., Carin Ann Clauss, Bobbye D. Spears, Leroy M. Jahn, Attys., United States Dept. of Labor, Washington, D. C., Marvin Tincher, Regional Atty., Nashville, Tenn., on brief.

Before EDWARDS, PECK and KENT, Circuit Judges.

KENT, Circuit Judge.

This is an appeal by Square D Company (Company), and a cross-appeal by the Secretary of Labor (Secretary), from a judgment of the District Court finding that the Company had violated the provisions of 29 U.S.C. §§ 206(d) (1) and (3):

"(d) (1) No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: *Provided*, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee."

"(3) For purposes of administration and enforcement, any amounts owing to any employee which have been withheld in violation of this subection shall be deemed to be unpaid minimum wages or unpaid overtime compensation under this chapter."

and 29 U.S.C. §§ 215(a) (1) and (2):

"§ *215. Prohibited acts; prima facie evidence*

(a) After the expiration of one hundred and twenty days from June 25, 1938, it shall be unlawful for any person—

(1) to transport, offer for transportation, ship, deliver, or sell in commerce, or to ship, deliver, or sell with knowledge that shipment or delivery or sale thereof in commerce is intended, any goods in the production of which any employee was employed in violation of section 206 or section 207 of this title, or in violation of any regulation or order of the Administrator issued under section 214 of this title; except that no provision of this chapter shall impose any liability upon any common carrier for the transportation in commerce in the regular course of its business of any goods not produced by such common carrier, and no provision of this chapter shall excuse any common carrier from its obligation to accept any goods for transportation; and except that any such transportation, offer, shipment, delivery, or sale of such goods by a purchaser who acquired them in good faith in reliance on written assurance from the producer that the goods were produced in compliance with the requirements of this chapter, and who acquired such goods for value without notice of any such violation, shall not be deemed unlawful;

(2) to violate any of the provisions of section 206 or section 207 of this title, or any of the provisions of any regulation or order of the Administrator issued under section 214 of this title."

The District Court concluded that the Company had unlawfully discriminated against women employees by paying lower wages for equal work and entered an award for back pay for the period from May 3, 1965 to March 1, 1966. The trial court held that recovery for back wages

prior to May 3, 1965 was barred by the provisions of Section 6 of the Portal-to-Portal Act, 29 U.S.C. § 255:

"§ *255. Statute of limitations*

Any action commenced on or after May 14, 1947, to enforce any cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, or the Bacon-Davis Act—

(a) if the cause of action accrues on or after May 14, 1947—may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued;"

and that recovery of back wages after March 1, 1966, was barred by the Company's good faith reliance upon a letter received from the Regional Director, Wage and Hour and Public Contracts Division of the United States Department of Labor, which the Company treated as an approval of its *plan* (put into effect March 1, 1966) to abolish sex discrimination in employment about which the Secretary had made complaint, pursuant to Section 10 of the Portal-to-Portal Act, 29 U.S.C. § 259:

"§ *259. Reliance in future on administrative rulings, etc.*

(a) In any action or proceeding based on any act or omission on or after May 14, 1947, no employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay minimum wages or overtime compensation under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, or the Bacon-Davis Act, if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of the agency of the United States specified in subsection (b) of this section, or any administrative practice or enforcement policy of such agency with respect to the class of employers to which he belonged. Such a defense, if established, shall be a bar to the action or proceeding, notwithstanding that after such act or omission, such administrative regulation, order, ruling, approval, interpretation, practice, or enforcement policy is modified or rescinded or is determined by judicial authority to be invalid or of no legal effect."

There is no question raised but that the Company is engaged in the production of products sold in interstate commerce within the meaning of Section 206(d) of the Act.

Before May 3, 1965, the Company had different wage grades for different classifications of employment. Some of the classifications of employment were designated "male" and some were designated "female." There were categories of employment related to machine operations and assembly operations for each sex. The Company contended that the categories were fundamentally distinct and required different degrees of physical effort justifying classification as "male" or "female." The trial court concluded that the distinctions which the Company asserted existed with regard to the job classifications and to the revised job classifications were largely contrived and illusory both before and after March 1, 1966. Thereafter he concluded that any pay differentials based on such classifications were unjustified and violated the provisions of the Act. He limited recovery of back wages, however, because of the letter, to which reference has been made, addressed to the Company by the Regional Director.

At the outset the Company claims in its appeal that the Secretary of Labor did not meet the burden of proof of establishing that the jobs in question were equal within the meaning of the statute and that the District Court's findings of fact on which was

based the determination of such equality were insufficient. Adequate findings of fact by the trial judge are essential to the resolution of a dispute of this nature. Hodgson v. Brookhaven General Hospital, 436 F.2d 719 (5th Cir. 1970).

Upon examination of the record and the opinion of the District Judge it appears to this Court that the trial judge did in fact make findings responsive to the criteria set forth in the statute prohibiting wage discrimination based on sex, except for the similarity of working conditions, a factor which on this record does not appear to have been in dispute. The statute, 29 U.S.C. § 206(d) (1) prohibits wage discrimination based on sex: "* * * on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, * * * ." From the District Court opinion it appears that the District Judge examined the facts in the light of the statutory standards and made findings which are sufficient to enable this Court to ascertain that the proper tests were applied to the evidence.

We cannot set aside the findings of fact of the District Judge unless they are clearly erroneous. Rule 52(a), Rules of Civil Procedure, 28 U.S.C.A.; Strickler v. Pfister Associated Growers, Inc., 319 F.2d 788, 790 (6th Cir. 1963). Even a cursory review of this record, which has been carefully reviewed, establishes that the District Judge's findings were not clearly erroneous but in fact they appear to be eminently correct. That same careful review of the record clearly establishes that the Secretary met the burden of proof required in an action based on this statute.

Much of the evidence was directed to the question of the equality of skill, effort and responsibility required to perform the work in the job classifications as revised effective March 1, 1966. The Secretary called as witnesses employees of the Company who testified as to their duties, the manner in which they spent their working time, the weight of the material and products handled, etc. The Company called as witnesses employees, company engineers and officials who testified as to differences in the job classification requirements. Clearly these were issues of fact to be resolved by the District Judge. We are satisfied that the findings of fact in his opinion are clear and supported by the evidence.

The Company also claims that by the changes made in job classifications, which made all jobs "available" to all employees regardless of sex after March 1, 1966, it corrected any violation of the statute. This position was rejected by the trial court and is rejected by this Court. Women were not shifted from one classification to another to any substantial degree but each classification was opened as jobs might become available. This was not sufficient. As stated in Shultz v. American Can Company-Dixie Products, 424 F.2d 356, 359 (8th Cir. 1970):

> "[1] At the outset, we think it clear that the Company did not cure the alleged violation of the Equal Pay Act by agreeing to open the night shift to women. If in fact the work of the women was equal to that of the men, the Company became obligated to pay them the same scale as their male counterparts on the effective date of the Act, June 11, 1965. It could not relieve itself of that obligation by agreeing to allow some women to work on the night shift at a higher rate of pay at some future date when a vacancy occurred."

The law relating to continued violations of the Act, despite changes making all classifications available without regard to sex, is as set forth in Shultz v. Saxonberg Ceramics, Inc., 314 F.Supp. 1139, 1146 (W.D.Pa.1970):

> "[9] Plaintiff contends that inasmuch as the two jobs were equal within the terms of the Act and that men operators no longer operate these machines, that the continued payment of the 'old', lower rate to the female operators who are now exclusively oper-

ating the machines is an impermissible wage differential since it amounts to a wage reduction. We agree. *This violation will continue until the company, by new contractual arrangement by voluntary action or by court order, raises, or is forced to raise, the wages of the female operators to that of the male operators as of the time the males ceased to operate the machines together with all increments to date.*" [Citations omitted] (Emphasis supplied)

The trial judge was correct in concluding that the Company was discriminating against female employees in violation of the Act on May 3, 1965, and that the discrimination continued despite the Company's changes of classification and despite the fact that all classifications were "available" regardless of sex, in the event there were new openings.

Insofar as the Company's appeal is concerned the judgment of the District Court must be affirmed.

This brings us to the Secretary's cross-appeal which raises the issue as to the right of the Company to rely upon the letter of February 2, 1966, written by the Regional Director, Wage and Hour and Public Contracts Division of the United States Department of Labor. In the letter the Regional Director stated, in part, in relation to proposed rearrangements of job classifications and pay rates for the employees:

"If our understanding is correct, and if the Company operates in accordance with the proposal, we are not prepared to say that the proposed pay plan would contravene the equal pay provisions of the Fair Labor Standards Act with respect to the affected employees. You realize, of course, that the courts might construe the equal pay requirements differently in situations such as those involved here."

After receipt of the letter the Company executed a new contract with the Union which represented its employees, effective March 1, 1966. In discussing the letter and the new contract and refusing to find liability for back wages beyond March 1, 1966, the trial judge stated as follows:

"Furthermore it is the court's opinion that the defendant has acted in good faith since the execution of the contract negotiated by the International Brotherhood of Electrical Workers on March 1, 1966. The Portal-to-Portal Act relieves employers who have acted in good faith in conformity with and in reliance on any written administrative order, ruling, or approval. Portal-to-Portal Act, Part IV, Section 10, 29 U.S.C. 259(a). On February 2, 1966, the defendant received a letter from the Regional Director of the Department of Labor concerning the proposed plan which was subsequently adopted on March 1, 1966. The Letter temporized by saying that the Department was not at that time prepared to say whether the proposed plan contravened the equal pay provision of the Act. At that time no court rulings interpreting the Equal Pay Act had been reported. Although the letter did not explicitly condone the plan it did not condemn it. The defendant's actions, after receipt of the February 2, 1966, letter were, under the circumstances, reasonable and it should not be held liable for back wages under Section 6 of the Fair Labor Standards Act from that time (the inception of the current plan) forward". (App. pp. 638–639)

It is the Secretary's contention that the letter received could not under the statute, or the regulations issued thereunder, form a basis for the defense of good faith reliance as found by the trial judge. The Statute 29 U.S.C. § 259(a) and § 259(b) provides as follows:

"§ *259. Reliance in future on administrative rulings, etc.*

(a) In any action or proceeding based on any act or omission on or after May 14, 1947, no employer shall be subject to any liability or punishment for or on account of the failure

of the employer to pay minimum wages or overtime compensation under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, or the Bacon-Davis Act, if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of the agency of the United States specified in subsection (b) of this section, or any administrative practice or enforcement policy of such agency with respect to the class of employers to which he belonged. Such a defense, if established, shall be a bar to the action or proceeding, notwithstanding that after such act or omission, such administrative regulation, order ruling, approval, interpretation, practice, or enforcement policy is modified or rescinded or is determined by judicial authority to be invalid or of no legal effect.

(b) The agency referred to in

(1) in the case of the Fair Labor subsection (a) of this section shall be —

Standards Act of 1938, as amended —the Administrator of the Wage and Hour Division of the Department of Labor;

(2) in the case of the Walsh-Healey Act—the Secretary of Labor, or any Federal officer utilized by him in the administration of such Act; and

(3) in the case of the Bacon-Davis Act—the Secretary of Labor."

These actions were brought under the Fair Labor Standards Act of 1938, as amended. § 259(a) requires that the writing must be "of the agency of the United States specified in subsection (b) of this section," and § 259(b) specifically provides, *inter alia,* that the agency referred to in subsection (a) shall be "the *Administrator* of the Wage and Hour Division of the Department of Labor." (Emphasis supplied). The Company argues that "Administrator" means the organization rather than the individual, but unfortunately the regulations and the case law do not support the Company's position. It is provided in 29 C.F.R. § 790.13:

"DEFENSE OF GOOD FAITH RELIANCE ON ADMINISTRATIVE REGULATIONS, ETC.

§ *790.13 General nature of defense.*

(a) Under the provisions of secgions 9 and 10 of the Portal Act, an employer has a defense against liability or punishment in any action or proceeding brought against him for failure to comply with the minimum wage and overtime provisions of the Fair Labor Standards Act, where the employer pleads and proves that 'the act or omission complained of was in good faith in conformity with and in reliance on any administrative regulation, order, ruling, approval, or interpretation' or 'any administrative practice or enforcement policy * * * with respect to the class of employers to which he belonged.' In order to provide a defense with respect to acts or omissions occurring on or after May 14, 1947 (the effective date of the Portal Act), the regulation, order, ruling, approval, interpretation, administrative practice or enforcement policy relied upon and conformed with must be that of the 'Administrator of the Wage and Hour Division of the Department of Labor,' and a regulation, order, ruling, approval, or interpretation of the Administrator may be relied on only if it is in writing."

and in 29 C.F.R. § 790.19:

"(a) In order to provide a defense under section 9 or section 10 of the Portal Act, the regulation, order, ruling, approval, interpretation, administrative practice or enforcement policy relied upon and conformed with must be that of an 'agency of the United States.' Insofar as acts or omissions occurring on or after May 14, 1947 are concerned, it must be that of the 'agency of the United States specified in' section 10(b), which, in the case of the Fair Labor Standards Act,

is 'the Administrator of the Wage and Hour Division of the Department of Labor.' "

The position taken by the Company was rejected by the Tenth Circuit in United States v. Stocks Lincoln-Mercury, Inc., 307 F.2d 266 (1962), at pages 270, 271:

"Section 10(b) (1) of the Portal to Portal Act provides that the 'agency of the United States' whose rulings may be relied upon in the case of the Fair Labor Standards Act of 1938 is the Administrator of the Wage and Hour Division of the Department of Labor. Such Administrator is the person designated by statute to administer the Fair Labor Standards Act of 1938, 52 Stat. 1060, 29 U.S.C.A. § 201 et seq."

* * * * * *

"[1] If paragraphs (1), (2) and (3) of subsection (b) of § 10 of the Portal to Portal Act are to be given a uniform construction, then the agency contemplated in each is the official vested with primary or final authority to administer the provisions of the particular Act in question, not a minor official in such agency.

"That construction comports with the Congressional intent, manifested by the debates when the Bill was before the House and Senate, by a floor amendment explained and adopted in the Senate and particularly by the language of the Conference Report on the Bill, which in part reads:

'It should also be noted that under both sections 9 and 10 the regulations, interpretations, enforcement policies, etc., which may be in good faith relied on must be those of an "agency" and not of an individual officer or employee of the agency. Thus if inspector A tells the employer that the agency interpretation is that the employer is not subject to the Act, the employer is not relieved from liability, despite his reliance in good faith on such interpretation, unless it is in fact the interpretation of the agency.' "

And see also National Automatic Laundry and Cleaning Council v. Shultz, 143 U.S.App.D.C. 274, 443 F.2d 689, 700 (1971); Murphy v. Miller Brewing Company, 307 F.Supp. 829, 838 (E.D. Wis.1969), Aff'd. Hodgson v. Miller Brewing Company; Murphy et al. v. Miller Brewing Company (consolidated) 457 F.2d 221 (7th Cir., March 2, 1972).

Having reached the conclusion that the Company was not justified in relying upon the letter from the Regional Director we reverse the conclusion of the District Court that the Company was excused from paying back wages after March 1, 1966. We find it unnecessary to discuss any other claimed errors.

The judgment is affirmed in part and reversed in part and remanded to the District Court for further proceedings not inconsistent with this opinion.