**William F. PETRLIK et al.**

v.

**COMMUNITY REALTY COMPANY et al.**

Civ. No. 20175–B.

United States District Court, District of Maryland.

June 23, 1972.

William F. Hickey and James D. Newton, Silver Spring, Md., for plaintiffs.

Thomas Canafax, Jr., Washington, D. C., for defendants.

BLAIR, District Judge.

## OPINION

Plaintiffs bring this suit under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., claiming specified amounts of overtime compensation, liquidated damages, attorney fees and costs from the defendants. The claims arise out of their employment in the maintenance department of Community Realty Company, Inc., at the Springhill Lake Apartments near Greenbelt, Maryland for periods in 1966 and 1967. At that time, Community Realty, a property management firm, managed Springhill Lake Apartments for the individual defendants or partnerships of which they were members for a fee based on a percentage of gross rentals generated by the apartment project.

It is not disputed and from substantial evidence the court finds as a fact and concludes as a matter of law that at the times pertinent to the issues in this case Community Realty was an enterprise engaged in interstate commerce within the meaning of § 3(s) of the Fair Labor Standards Act. 29 U.S. C. § 203(s) (1961 Amendment).

Plaintiffs contend and defendants dispute that Community Realty was covered under the 1961 Amendments to the Act. It is defendants' contention that prior to the 1966 Amendments (effective February 1, 1967) there was no coverage "if the annual gross volume of sales of such enterprise is less than $1,-000,000" and that as applied to Community Realty's business the gross volume of sales must be based upon the management fees received rather than the gross rentals collected. Defendants' contention is rejected. It does not appear to be disputed and from the evidence the court finds that at all times pertinent to the issues in this case, the gross volume of rental receipts of Community Realty was in excess of the amounts set forth by law to bring coverage under the Act and the court concludes as a matter of law that the gross volume of rentals received rather than management fees earned is the proper test to be applied in determining coverage. Shultz v. Falk, 439 F.2d 340, 347 (4th Cir.), cert. denied 404 U.S. 827, 92 S.Ct. 62, 30 L.Ed. 2d 56 (1971); Hodgson v. Arnheim and Neely, Inc., 444 F.2d 609, 612 (3rd Cir.

1971). This holding necessarily disposes of defendants' contention that overtime must be calculated as to Community Realty on the basis of 44 hours under the provisions of § 207(a) (2). Since Community Realty was not a newly covered employer under the 1966 Amendments to the Act, this section has no application and the usual 40 hour per week provision applies.

■ Plaintiffs have brought this action against the named individual defendants and Community Realty with the contention that all defendants were joint employers. In a proper case, there is a basis in law for such a contention. Shultz v. Falk, 439 F.2d 340, 347 (4th Cir. 1971). The evidence is almost wholly devoid of any substantial support for this claim. Apart from the business relationship which existed between the corporate defendant as property manager and the individual defendants as owners, one witness testifying in rebuttal stated that Edward M. Perkins was observed on the apartment site from time to time and on occasion had told him to "fix" various things. The court finds as a fact that there is no substantial evidence in the case to support the contention that the individual defendants or any of them were employers jointly with Community Realty of any of the plaintiffs and the court further concludes as a matter of law that the individual defendants or any of them were not employers of any of the plaintiffs and are entitled to be dismissed from this suit.

■ Petrlik's employment with Community Realty in the job of maintenance man commenced on December 19, 1966 and terminated October 27, 1967. Williams' employment by Community Realty as a maintenance man commenced on May 12, 1967 and terminated October 27, 1967. Matthews was employed by Community Realty as the Maintenance Superintendent on February 27, 1967 and his employment terminated on September 1, 1967. The termination of employment in the case of each employee was the voluntary action of the employee and the court finds as a fact was for reasons other than failure to receive overtime compensation. Additionally the court finds that under the respective contracts of employment, each plaintiff was to receive an agreed monthly salary, was to live in residence in one of the apartments at Springhill Lake Apartments and the rental value of the apartment as chosen by the employee was to be deducted from the agreed monthly salary. The court further finds that living on the premises was an essential part of the contract of employment and but for the employee's willingness to agree thereto the employee would not have been hired for the particular job in question. Thus the apartment allowance was part of each employee's compensation. *Cf.* Crago v. Rockwell Manufacturing Company, 301 F.Supp. 743, 746 (W.D.Pa.1969).

Plaintiffs contend that the salary to be paid them was for a 40 hour period in each workweek. By their testimony they knew at the time the contract of employment was made or, if not then, soon thereafter that they would be required to stand "emergency" and "backup" duty. Even with this knowledge, they contend that this work did not fall under the work to be compensated for by their salary and that they are entitled to overtime compensation for these hours.

■ Defendant contends that the agreed weekly compensation to be paid to each of the plaintiffs was, under the contract of employment, a salary for all hours worked. Each employment contract was oral. No overtime compensation was paid to any of the employees for extra duty, except in two or three instances where work not of a routine maintenance nature was required during off-duty hours. These instances related to emergencies which endangered life and property, were extraordinary in nature, and were occasions on which the employees involved were advised that overtime would be paid and such overtime was calculated on the basis of time

and one-half for a 40 hour week. Although the evidence is conflicting in some respects, the court is satisfied and finds from the weight of credible evidence that the oral contract of employment in the case of each plaintiff when entered into called for the employee to receive a fixed salary for the regular shift hours from 8:00 a.m. to 4:30 p.m. (or 8:30 a.m. to 5:00 p.m.) Monday through Friday and for such "emergency" and "back-up" duty and emergency maintenance tasks as they would be called upon to perform in the course of a workweek. Alternatively, and to the extent that on review this finding should be determined not to be supported by substantial evidence, the court would further find that the employees by their conduct and acceptance of the practices of the employer entered into such a contract by acquiescence at a time so shortly after the initial employment as to have no substantial effect upon the findings of the court as hereinafter set forth with respect to the amounts that various plaintiffs are entitled to recover. General Electric Co. v. Porter, 208 F.2d 805, 44 A.L.R.2d 854 (9th Cir. 1953), cert. denied 347 U.S. 975, 74 S.Ct. 787, 98 L.Ed. 1115 (1954). In so finding, the court is cognizant of and has applied the provisions contained in 29 CFR § 778.114. Accordingly the court concludes as a matter of law that to the extent any of the plaintiffs are entitled to compensation for extra hours worked, the amounts to which they are entitled shall be computed on the basis of one-half of the regular rate for all hours worked in excess of 40 in one week and that the regular hourly rate shall be determined by dividing the number of hours actually worked into the fixed weekly salary. This applies the fluctuating workweek principle. Overnight Motor Transportation Co., Inc. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942).

■ Community Realty contends that the claims of Petrlik and Williams are barred by § 10 of the Portal-to-Portal Act of 1947, 29 U.S.C.A. § 259, in that it acted in good faith reliance upon an administrative practice or policy of the Wage and Hour Division of the United States Department of Labor. From the evidence, this claim must fail. Community Realty produced as a witness Morris Terkletaub, Area Director of the Wage and Hour Division, Department of Labor, who at all times pertinent to this case was Investigation Supervisor having jurisdiction over Springhill Lake Apartments. Counsel for the plaintiffs strenuously objected to the acceptance by the court of Mr. Terkletaub's testimony which was received subject to the objection. In the court's view then and now, the objections were frivolous not for the least reason that his testimony in the court's view was helpful to the plaintiffs. Accordingly the objection is hereby overruled, the testimony is admitted and will be considered by the court. The most that came out of Mr. Terkletaub's testimony was that in late 1966 and early 1967, there was some doubt in his district with respect to the application and effect of the 1966 Amendments to the Act to real estate management firms. In view of this doubt, it was the practice in his district not to conduct compliance investigations with respect to real estate management firms until the doubts had been later resolved and that this practice had been discussed with the Assistant Regional Director of the Wage and Hour Division and possibly with the Regional Director and Deputy Regional Director as well. From these discussions, he believed that the practice had the approval of higher authority in the Division.

In opposition to this testimony, the plaintiffs produced as a witness Clarence T. Lundquist, who at the times in question had been Federal Wage and Hour Administrator and who testified that at the times in question there had been no such policy or practice within the Division which had his approval as Administrator. To bar recovery the reliance must rest in good faith upon the actions of the Administrator.

What appears from the cases and the interrelated statutory provisions is that "authoritative" rulings and interpretations of the agency needed for this defense are those issued by the Administrator of the Wage and Hour Division, and not by regional or field officials, but they can be issued by the Administrator in the form of an "opinion letter." National Automatic Laundry and Cleaning Council v. Shultz, 143 U.S.App.D.C. 274, 443 F. 2d 689, 700 (1971) Leventhal, J.); *accord*, Hodgson v. Square D Company, 459 F.2d 805 (6th Cir.1972); United States v. Stocks Lincoln-Mercury, Inc., 307 F.2d 266 (10th Cir. 1962).

The court finds as a fact that at the times in question there was no authoritative policy or practice within the Wage and Hour Division sanctioned by the Administrator upon which Community Realty could in good faith rely as a defense to these claims and concludes as a matter of law that the claims are not barred by § 10 of Portal-to-Portal Act of 1947.

■■ The court will now turn to the claims of the individual plaintiffs. Community Realty contends that Matthews is not entitled to recover because he is an "employee employed in a bona fide executive, administrative, or professional capacity . . ." under § 213 (a)(1) of the Act. In determining if Matthews is exempt from coverage, either of two tests may be applied. A so-called *"regular"* test provided in 29 C.F.R. § 541.1 removes from coverage under the Act an executive, administrative or professional employee whose primary duty is managing a subdivision of the enterprise, who customarily and regularly directs the work of two or more other employees, who has authority to hire or fire or whose suggestions and recommendations in that respect are given particular weight, who customarily and regularly exercises discretionary powers, and who does not devote more than 20 percent of his working time to activities not directly and closely related to the performance of his management or supervisory duties. Matthews relies principally on his contention that more than 20 percent of his hours were devoted to the performance of manual labor which was not directly and closely related to the performance of his duties as Maintenance Superintendent. On that point he cannot prevail. From the evidence, it is to this court clear beyond cavil that Matthews did not devote more than 20 percent of his time to manual labor nor indeed was there credible evidence from which the court could find that he devoted anything close to 20 percent to such work.

The shorter or so-called *"streamlined"* test is contained in 29 C.F.R. § 541.119. Under this test an employee is exempt from the Act's coverage if at a minimum his salary in 1967 was $150 per week and his primary duty consisted of the management of a recognized subdivision of the enterprise. Matthews' salary was in excess of $150 weekly.

The court finds as a fact that Matthews does not come under the provisions of §§ 206 and 207 because he fits within the exemption contained in § 213(a) (1) in all particulars as those particulars are enumerated above under both tests. The court concludes, therefore, as a matter of law that Matthews is not entitled to recover in this action and accordingly his claim is dismissed.

■ Petrlik's salary for all hours worked was $475 per month, including an apartment allowance of $150 per month, for all times that he was in Community Realty's employ. Williams' salary for all hours worked was $425 per month, including an apartment allowance of $141 per month, for all times in the employ of Community Realty until September 24, 1967 when the total effective salary was raised to $450 per month and continued at that rate for the remainder of his employment. Throughout the periods of employment of both men, it

was the practice of the employer to assign maintenance department employees on a rotating basis to what has previously been called in this opinion "emergency" duties and "back-up" duties for periods outside of the regular duty hours Monday through Friday each week. From the evidence, the court finds that these duties required the employee to remain in his apartment or, if not there, to have a responsible adult there and be readily available himself for the purpose of receiving off-duty calls relating to any emergencies arising in the apartment project or the receipt from tenants of any requests for assistance. With the exception of the foregoing limitations, the employee was free to utilize his time as he desired.

■ From the best evidence, the court finds as a fact that on the occasions when an employee performed such duties for a 24 hour day falling on a Saturday or Sunday, he performed on the average 6 hours of actual work out of each 24. On the occasion when an employee performed such duties between the hours of 4:30 p.m. and 8:00 a.m. the following day, he performed on the average 4 hours of actual work. Whether an employee is to be compensated for all hours while on duty status or only those hours actually worked is primarily a question of fact to be determined in each case. Skidmore v. Swift & Co., 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944). On the facts here present and in particular the fact that the employees were largely unfettered except for hours actually worked, the court holds only those hours worked to be compensable. See Annot., "Call or Waiting Time as Working Time Within the Minimum Wage and Overtime Provisions of the Fair Labor Standards Act (29 U.S.C. §§ 206, 207)," 3 A.L.R. Fed. 675 (1970) and cases cited therein. The employees have presented, apparently largely through reconstruction, a list of the dates and hours for these duties which they claim to have performed. While this evidence is not free from doubt, the court will resolve those doubts in favor of the plaintiffs and accepts their evidence of the dates and hours they were on emergency duty. Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 686–688, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946).

On the basis of the findings heretofore made, the court concludes as a matter of law that both Petrlik and Williams are entitled to recover overtime compensation. Set forth on Appendix A by weeks are the compensable overtime hours worked by Petrlik as found by the court together with the applicable hourly rate based upon the fluctuating workweek principle. The same is set forth on Appendix B for Williams.

■ Under § 216(b) of the Act an employer "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." A claim for such damages is made by the plaintiffs. Section 11 of the Portal-to-Portal Act of 1947, 29 U.S.C.A. § 260, provides that:

if the employer shows to the satisfaction of the Court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages . . .

Community Realty argues that liquidated damages should not be awarded in this case for the reasons that 1) Community Realty relied in good faith on a belief that there was in the Wage and Hour Division an administrative practice or procedure supporting Community Realty's interpretation of the Act as not applicable to these employees, and 2) that when Community Realty learned that the Wage and Hour Division took a

contrary view, it readily tendered the amounts computed by a representative of the Division to be due the employees. Clearly the burden of proving good faith rests with the employer, National Automatic Laundry and Cleaning Council v. Shultz, 143 U.S.App.D.C. 274, 443 F.2d 689, 697 (1971), and the award rests in the sound discretion of the trial court. McClanahan v. Matthews, 440 F.2d 320, 322 (6th Cir. 1971).

The court has already held that Community Realty is not entitled to the defense of good faith reliance under § 10 of the Portal-to-Portal Act. It so holds under § 11 as well. It further holds that its tender of sums determined to be due after the termination of plaintiffs' employment is not a good defense to the claim for liquidated damages. It concludes, therefore, as a matter of law that plaintiffs are entitled to liquidated damages in amounts equal to the compensable extra hours worked, all as set forth on Appendices A and B. Although in their complaints plaintiffs claimed interest from February 1, 1967, this claim appears to have been abandoned and clearly may not be allowed. Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 715–716, 65 S.Ct. 895, 89 L.Ed. 1296 (1945); J. F. Fitzgerald Construction Company v. Pederson, 324 U.S. 720, 65 S.Ct. 892, 89 L.Ed. 1316 (1945).

Under the provisions of § 216(b) of the Act, the court shall "allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." Plaintiffs have claimed an allowance for attorney's fees in the amount of $20,000. Quite clearly, such an award would be unconscionable.[1]

The attorneys are directed to consult with a view to reaching agreement on the attorney's fees to be allowed, giving full consideration to the usual criteria for the fixing of fees and taking into consideration in particular the result that has been achieved in this case. To the extent that the attorneys are unable to agree with respect to a proper allowance for attorney's fees, the court will entertain formal petition setting forth the basis for the fees claimed accompanied by way of illustration and not by way of limitation by a particularized account of the time involved in the handling of the case, with opportunity to counsel for Community Realty to file written opposition to the claim.

By July 5, 1972, counsel will present an order for judgment in accordance with this opinion allowing compensation to plaintiffs Petrlik and Williams for extra hours worked and liquidated damages in accordance with Appendices A and B as well as attorney's fees and reasonable costs.

1. Unconscionable when related to the claims which, if allowed in full for each plaintiff, and doubled by the full allowance of liquidated damages, would in the aggregate amount to $17,598.02.

APPENDIX  A

Frank  William  Petrlik

| Days for which overtime hours are claimed, grouped by weeks.[1] | Number of hours for which overtime compensation is found to be due by week. | Hourly rate calculated on the fluctuating workweek principle by week.[2] | Compensation found to be due by week. |
|---|---|---|---|
| December 24, 25 | 12 | $2.11 | $12.72 |
| December 26 | 4 | 2.49 | 5.00 |
| January 14, 15 | 12 | 2.11 | 12.72 |
| January 21, 22 | 12 | 2.11 | 12.72 |
| February 18, 19 | 12 | 2.11 | 12.72 |
| February 25, 26 | 12 | 2.11 | 12.72 |
| March 25, 26 | 12 | 2.11 | 12.72 |
| April 1, 2 | 12 | 2.11 | 12.72 |
| April 3, 4, 5, ·6, 7 | 20 | 1.83 | 18.40 |
| April 29, 30 | 12 | 2.11 | 12.72 |
| May 1, 2, 3, 4, 5 | 20 | 1.83 | 18.40 |
| May 27, 28 | 12 | 2.11 | 12.72 |
| June 3, 4 | 12 | 2.11 | 12.72 |
| June 5, 6, 7, 8, 9 | 20 | 1.83 | 18.40 |
| July 8, 9 | 12 | 2.11 | 12.72 |
| July 15, 16 | 12 | 2.11 | 12.72 |
| July 17, 18, 19, 20, 21 | 20 | 1.83 | 18.40 |
| August 26, 27 | 12 | 2.11 | 12.72 |
| August 28, 29, 30, 31 September 1 | 20 | 1.83 | 18.40 |
| September 8 | 4 | 2.49 | 5.00 |
| September 14 | 4 | 2.49 | 5.00 |
| September 20 | 4 | 2.49 | 5.00 |
| September 26 October 1 | 10 | 2.19 | 11.00 |
| October 2, 7, 8 | 16 | 1.96 | 15.68 |

Total compensation due: $304.04

Liquidated damages due: 304.04

Total judgment in favor of Frank William Petrlik $608.08

[1] Taken from Plaintiffs' Exhibit No. 1.

[2] Monthly salary: $475.

Fixed Weekly salary: $109.62.

APPENDIX B

Robert Lee Williams

| Days for which overtime hours are claimed, grouped by weeks.[1] | Number of hours for which over-time compensation is found to be due by week. | Hourly rate calculated on the fluctuating workweek principle by week.[2] | Compensation found to be due by week. |
|---|---|---|---|
| May 27, 28 | 12 | $1.89 | $11.40 |
| May 29, 30, 31 | | | |
| June 1, 2 | 20 | 1.63 | 16.40 |
| July 1, 2 | 12 | 1.89 | 11.40 |
| July 8, 9 | 12 | 1.89 | 11.40 |
| July 10, 11, 12, 13, 14 | 20 | 1.63 | 16.40 |
| August 12, 13 | 12 | 1.89 | 11.40 |
| August 19, 20 | 12 | 1.89 | 11.40 |
| August 21, 22, 23, 24, 25 | 20 | 1.63 | 16.40 |
| September 10 | 6 | 2.13 | 6.42 |
| September 11, 16, 17 | 16 | 1.75 | 14.08 |
| September 30 | 6 | 2.26 | 6.78 |
| October 6 | 4 | 2.36 | 4.72 |
| October 12 | 4 | 2.36 | 4.72 |
| October 18 | 4 | 2.36 | 4.72 |
| October 24 | 4 | 2.36 | 4.72 |

Total compensation due     $152.36
Liquidated damages due     152.36
Total judgment in favor of
     Robert Lee Williams     $304.72

[1] Taken from Plaintiffs' Exhibit No. 4.
[2] Monthly salary to September 24, 1967: $425.
    Fixed weekly salary to September 24, 1967: $98.08.
    Monthly salary from September 24, 1967: $450.
    Fixed weekly salary from September 24, 1967: $103.85.