**Donald SCHNEIDER, et al., Plaintiffs,**

v.

**CITY OF SPRINGFIELD, Defendant.**

**No. C–3–96–62.**

United States District Court,
S.D. Ohio,
Western Division.

Jan. 5, 1999.

---

Dalma C. Grandjean, Dayton, OH.

Kellie A. Kalbac, Dayton, OH.

Robin B. DeBell, Springfield, OH.

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. # 46); PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (DOC. # 49) SUSTAINED IN PART AND OVERRULED IN PART; PLAINTIFFS' MOTION FOR ATTORNEY'S FEES (DOC. # 49) OVERRULED WITHOUT PREJUDICE TO RENEWAL AT THE CONCLUSION OF THIS LITIGATION; PLAINTIFFS' MOTION FOR SANCTIONS (DOC. # 49) OVERRULED.

RICE, Chief Judge.

Plaintiff Donald Schneider is a firefighter-paramedic who formerly worked as a dispatcher for the Defendant. He contends the Defendant violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a)(1), by failing to pay him overtime wages. In a September 4, 1997, Decision and Entry, the Court agreed, finding the Defendant liable to the Plaintiff for overtime wages as a matter of law.[1] Accordingly, the Court overruled the Defendant's Motion for Summary Judgment (Doc. # 13), and sustained the Plaintiff's Motion for Partial Summary Judgment (Doc. # 18), which was directed to the Defendant's FLSA liability. As a result of the Court's Decision, the only remaining issue is the relief to which the Plaintiff is entitled. Presently before the Court are cross motions for summary judgment addressing that issue. (Doc. # # 46, 49). The Plaintiff's Motion also addresses issues of attorney's fees and discovery sanctions.

[1]. The other Plaintiffs in this lawsuit are Randall Ware and Ernest Whitehead, who also worked as firefighter-dispatchers for the Defendant. Following the Court's Decision and Entry finding the Defendant liable to Schneider for overtime wages (Doc. # 23), Ware and Whitehead each filed a Consent to be Added as a Party Plaintiff. (Doc. # # 33, 34). The Court construed Ware's consent as a motion seeking leave to be added as a party Plaintiff, and sustained the same, prior to the filing of the present Motions for Summary Judgment. (*See* Notation Entry appearing on Doc. # 34). The Court subsequently treated Whitehead's consent as a motion seeking leave to be added as a party Plaintiff, and sustained the same, *after* the filing of the present Motions for Summary Judgment. (Doc. # 52). Because the Court added Whitehead as a party Plaintiff after the filing of the Plaintiffs' present Motion for Summary Judgment, he cannot be considered a party to that Motion. Because the Court added Ware as a Plaintiff prior to the filing of the Plaintiffs' present Motion for Summary, however, he is a party to the Motion. Although the Court refers to Schneider as "the Plaintiff" in its analysis *infra*, its reasoning and conclusions therefore apply to Ware as well.

Although Whitehead was not a party Plaintiff when the Plaintiffs' present Motion for Summary Judgment was filed, the Court ordinarily would afford him the opportunity to file his own Motion for Summary Judgment. The Court notes, however, that the rapidly approaching January 25, 1999, trial date for this litigation precludes the briefing of a new summary judgment motion. Nevertheless, for the same reasons set forth more fully *infra*, the Court can envision no circumstances under which the Defendant would be immune from all damages with respect to Whitehead. Similarly, for the same reasons set forth more fully *infra*, the Court can envision no circumstances under which Whitehead could establish that the Defendant willfully violated the Fair Labor Standards Act. Consequently, Whitehead and the Defendant might wish to stipulate, not to the correctness of the Court's ruling in this Motion, but to its equal applicability in Whitehead's case. Whitehead and the Defendant also may wish to move at trial for judgment as a matter of law, pursuant to Fed. R. Civ. Pro. 50, on the foregoing issues.

## I. Factual and Procedural Background [2]

Plaintiff Donald Schneider has been employed by the Defendant as a firefighter-paramedic since August 13, 1985. (Schneider Affidavit at ¶ 1). He worked for nearly four years as a full-time dispatcher for the City of Springfield, Ohio, Fire Division. (*Id.* at ¶ 2). As a dispatcher, the Plaintiff worked an average of 53 hours per work week. (*Id.* at ¶ 4). He received overtime compensation for any hours he worked in excess of 144 hours during a 19–day work period. (Lee Affidavit at ¶ 7).

Until the fall of 1995, dispatchers such as the Plaintiff could be recalled only for "third alarm" fires. They were utilized at the Communications Center, where they did not engage in fire suppression activities, at the scene of fires as an aide to the incident commander, or in the command post. (*Id.* at ¶¶ 23, 27; Plaintiff's Exh. 25; Lee Depo. at 127). When working as an aide to the incident commander, a dispatcher relayed messages from the commander to the battalion chief, and did not engage in actual fire suppression activities. (Schneider Affidavit at ¶ 26; Lee Depo. at 127–128). After the fall of 1995, dispatchers were eligible to be recalled for certain residential fires. (Schneider Affidavit at ¶ 28; Lee Depo. at 148). While working as a dispatcher, the Plaintiff only responded once to a "third alarm" fire. (Schneider Affidavit at ¶ 37). During other such fires, when he already was on duty at the Communications Center, the Plaintiff remained there as a dispatcher. (*Id.*).

Based upon the foregoing facts, the Court found the Plaintiff entitled to overtime compensation for all hours he worked as a dispatcher in excess of 40 hours per week. (See Decision and Entry, Doc. # 23). In reaching this conclusion, the Court noted that the FLSA compels employers to pay overtime compensation to non-exempt employees who work more than 40 hours per week. The Court then found the Plaintiff not subject to the partial overtime exemption provided by 29 U.S.C. § 207(k). That provision allows less generous overtime compensation for employees "engaged in fire protection or law enforcement activities." In support of its ruling, the Court cited two reasons why the Plaintiff, as a dispatcher, was not an "employee engaged in fire protection activities." *First,* he was not assigned as a dispatcher for purposes of training or familiarization, or because of illness, injury, or infirmity, as required by 29 C.F.R. § 553.210. *Second,* he spent more than 20 percent of his dispatching time performing "non-exempt" work, which, pursuant to 29 C.F.R. § 553.212, precluded application of the § 207(k) partial overtime exemption. Accordingly, the Court found the Defendant liable to the Plaintiff for unpaid overtime wages. The Defendant subsequently filed a Motion for Summary Judgment (Doc. # 46) directed toward damages, and the Plaintiff responded with his own Motion for Summary Judgment (Doc. # 49), addressing damages, attorney's fees, and sanctions.

## II. Summary Judgment Standard

The Court first will set forth the parties' relative burdens once a motion for summary judgment is made. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its

---

**2.** Although the parties' motions address issues of damages, attorney's fees, and sanctions, the Court will provide a brief recitation of the historical facts underlying this litigation. The present statement of the facts has been extracted, in abbreviated form, from the Court's September 4, 1997, Decision and Entry (Doc. # 23), which resolved the issue of the Defendant's liability under the Fair Labor Standards Act.

motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. *See also Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial[,]" quoting *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 [6th Cir.1987] ). The burden then shifts to the non-moving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law under Fed.R.Civ.P. 50. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). *See also Michigan Protection and Advocacy Service, Inc. v. Babin,* 18 F.3d 337, 341 (6th Cir.1994) ("The plaintiff must present

more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff"). Rather, Rule 56(e) "requires the non-moving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ...'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson,* 958 F.2d 1367, 1374 (6th Cir.1992). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all *reasonable* inferences in the favor of that party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505 (emphasis added). If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2726.

In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir.1989), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990). *See also, L.S. Heath & Son, Inc. v. AT & T Information Systems, Inc.,* 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909,

915 n. 7 (5th Cir.) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment ...."), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, upon only those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

## III. *Analysis*

The Fair Labor Standards Act was enacted in 1938 to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). The Act requires employers to provide overtime compensation for non-exempt employees who work in excess of forty hours a week. 29 U.S.C. § 207(a)(1). In a September 4, 1997, Decision and Entry (Doc. # 23), the Court determined that the Plaintiff is not exempt from the provisions of the FLSA as an "employee engaged in fire protection activities." Although the Court sustained the Plaintiff's Motion for Summary Judgment on the issue of liability, it noted that the Plaintiff's request for FLSA damages and declaratory relief remained viable.

In its present Motion for Summary Judgment (Doc. # 46), the Defendant presents three arguments against the Plaintiff's recovery of damages. Conversely, in his Motion for Summary Judgment (Doc. # 49), the Plaintiff contends he is entitled, as a matter of law, to FLSA damages, attorney's fees and sanctions. The parties' cross motions for summary judgment address the following issues: (1) the Defendant's immunity from all damages under

29 U.S.C. § 259(a); (2) whether the Defendant's FLSA violation was "willful" under 29 U.S.C. § 255(a); and (3) the availability of liquidated damages under 29 U.S.C. § 260. The Court will address each of these issues in turn.

### A. *Defendant's Absolute Immunity from Damages*

The FLSA provides that an employer who violates the Act's overtime compensation provisions is liable to the employee affected in the amount of his unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 U.S.C. § 216(b). Despite this provision, § 259(a) grants an employer, under certain circumstances, absolute immunity from paying unpaid overtime compensation, liquidated damages, court costs, or attorney's fees for FLSA violations. Absolute immunity exists if the employer proves that its violation "was in good faith[,] in conformity with and in reliance on any written administrative regulation, order, ruling, approval or interpretation of the [Administrator of the Wage and Hour Division of the Department of Labor] ... or any administrative practice or enforcement policy of any such agency with respect to the class of employers to which he belonged." 29 U.S.C. § 259(a).[3]

In support of its argument that § 259(a) precludes the Plaintiff from recovering damages, the Defendant relies upon *Marshall v. Baptist Hospital, Inc.,* 668 F.2d 234 (6th Cir.1981). The defendant hospital in *Marshall* had hired X-ray technician students enrolled in a two-year college program, but had not paid the students the minimum wage. The hospital defended its actions by relying upon a ruling issued by the Administrator of the Wage and Hour Division of the Department of Labor. The ruling, which the hospital's personnel di-

**3.** This affirmative defense, if established, "shall be a bar to the action or proceeding, notwithstanding that after such act or omission, such administrative regulation, order, ruling, approval, interpretation, practice or enforcement policy is modified or rescinded or is determined by judicial authority to be invalid or of no legal effect." 29 U.S.C. § 259(a).

rector had reviewed, specifically governed paramedical students. Its first sentence suggested that the Department of Labor possessed the discretion to treat paramedical students as hospital employees. A second sentence, however, then discussed X-ray technicians and stated: "Pending interpretation by the courts, Wage–Hour will not assert that a student in training to become a[n] ... X-ray technician ... where on-the-job training is combined with classroom lectures and laboratory instruction to comprise an extensive program of education generally leading to a ... degree ... is an employee of the hospital where so engaged." *Id.* at 237.

Given the hospital's undisputed reliance upon this assurance made by the Administrator of the Wage and Hour Division, the Sixth Circuit found the hospital not liable for $170,000 in minimum wage payments to the students. In so doing, the court noted that the students "fit precisely" within the terms of the Administrator's ruling. *Id.* Accordingly, the court reasoned that the hospital acted rationally by believing that the administrative interpretation insulated it from retroactive minimum wage payments under the FLSA. *Id.* at 238.

In the years following *Marshall*, the Sixth Circuit has had little additional opportunity to construe the defense to damages provided by § 259(a). Case law from other circuits, however, reiterates that the provision provides refuge for an employer *only* when it relies upon an administrative opinion that addresses the employer's specific circumstances. "The Portal Act and its regulations strongly imply that an employer who relies on and conforms to an Opinion Letter which specifically addresses him and his circumstances is·acting in good faith." *Frank v. McQuigg, et al.,* 950 F.2d 590, 598 (9th Cir.1991), citing 29 C.F.R. § 790.15(b) (1990); *see also Cole v. Farm Fresh Poultry, Inc.,* 824 F.2d 923, 928 (11th Cir.1987) ("While the attempts of employers to make correct decisions on the basis of general guidelines is prudent

and commendable the attempt alone does not raise the statutory bar of § 259. The administrative interpretation relied upon must provide a clear answer to the particular situation in order for the employer to rely on it."); *Nelson v. Alabama Institute for Deaf and Blind,* 896 F.Supp. 1108, 1113 (N.D.Ala.1995) (recognizing that § 259(a) applies when the administrative interpretation relied upon addresses the particular situation at issue); *Horan v. King County,* 740 F.Supp. 1471, 1480 (W.D.Wash.1990) ("In order for the County to be successful on its good faith defense under § 259, the County must show that the DOL letter rulings on which it relied provided a clear answer to its particular situation.").

Limiting the availability of § 259(a) to employers who rely on administrative rulings addressing their particular circumstances is consistent with the rationale underlying the statute. "The good-faith defense exists in order to protect an employer who 'innocently and to his detriment, followed the law as it was laid down to him by government agencies, without notice that such interpretations were claimed to be erroneous or invalid.'" *Olson v. Superior Pontiac–GMC, Inc.,* 765 F.2d 1570, 1579 (11th Cir.1985) (quoting *Clifton D. Mayhew, Inc. v. Wirtz,* 413 F.2d 658, 661 (4th Cir.1969), modified on other grounds, 776 F.2d 265 (1985)). It operates as an "estoppel defense to protect employers from particular agencies' mistaken interpretations of particular statutory requirements; it does not come into effect until after there has been a failure to comply with the relevant statute due to an erroneous agency interpretation." *Cole,* 824 F.2d at 929.

■ In the present case, the Defendant contends it relied upon several documents to conclude that the Plaintiff was exempt, under 29 U.S.C. § 207(k), from traditional overtime compensation. Those documents include two letter rulings from the Administrator of the Wage and Hour Division of the Department of Labor, and a commercial Fair Labor Standards Handbook. In

support of its argument, the Defendant also cites the sparse precedent, prior to the Court's September 4, 1997, Decision and Entry (Doc. # 23), on the issue of § 207(k)'s applicability to firefighters employed as dispatchers.

For purposes of the Defendant's § 259(a) affirmative defense, the Court accepts, arguendo, that the City of Springfield attempted to comply with the FLSA and the Administrator's rulings. The fatal defect in the Defendant's argument, however, is that the Administrator's rulings did not address the City's particular circumstances. The October 10, 1990, letter ruling cited by the Defendant considered whether *civilian* dispatchers may be considered fire protection or law enforcement employees who qualify for the § 207(k) partial overtime exemption. The Administrator concluded that civilian dispatchers are not eligible for the exemption. The ruling explained the operation of the § 207(k) exemption in detail, but did not discuss whether it applied to trained firefighters who work as dispatchers. Likewise, the August 21, 1987, letter ruling also discussed the applicability of § 207(k) to *civilian* dispatchers. In that ruling, the Administrator concluded that civilian police dispatchers do not qualify for the exemption because they are not "employed in law enforcement activities." The ruling does not mention whether trained police officers would qualify for the exemption if they worked as dispatchers.

In short, the foregoing letter rulings do not address the Defendant's particular circumstances. The Defendant was not concerned with § 207(k)'s applicability to civilian dispatchers, and the Plaintiff did not "fit precisely" within the terms of the Administrator's ruling. *See Marshall,* 668 F.2d at 237. As noted above, the affirmative defense provided by 29 U.S.C. § 259(a) is intended to protect employers relying in good faith, upon erroneous advice from the Administrator. In the present case, however, the Administrator's letter ruling is accurate. The Defendant simply drew an incorrect inference from an accurate letter ruling that did not address the circumstances at hand. "While the attempts of employers to make correct decisions on the basis of general guidelines is prudent and commendable[,] the attempt alone does not raise the statutory bar of § 259." *Cole,* 824 F.2d at 928. Accepting the Defendant's argument that the Administrator's letter rulings provided sufficient guidance to satisfy § 259(a) would mean that any employer could establish a good-faith defense simply by showing that it relied, by inference, on a marginally relevant administrative guideline that provided no opinion regarding the employer's particular situation. The Court declines to adopt this expansive interpretation of § 259(a).

The Defendant also cites a question-and-answer section of a Fair Labor Standards Handbook published by the Thompson Publishing Group to support its § 259(a) defense. Finally, the Defendant alleges the absence of any direct authority, interpretation, or ruling foreshadowing the Court's September 4, 1997, ruling. Given the "light" authority on the issue of § 207(k)'s applicability to firefighter-dispatchers, and the Plaintiff's failure to raise the issue for approximately three years, the Defendant contends the Court should find its § 259(a) affirmative defense established as a matter of law.

The Court finds these arguments unpersuasive. In order to establish the affirmative defense provided by § 259(a), an employer must rely upon written advice provided by the Administrator of the Hour and Wage Division of the Department of Labor. *See Hodgson v. Square D Co.,* 459 F.2d 805 (6th Cir.1972); 29 U.S.C. § 259(a) and (b); 29 C.F.R. § 790.15(d) (recognizing that "the employer, insofar as the Fair Labor Standards Act is concerned, may rely only upon regulations, orders, rulings, approvals, interpretations, administrative practices and enforcement policies of the Administrator of the Wage and Hour Division"). As

noted above, the rationale behind the defense is that an employer reasonably may rely upon a direct ruling provided by the Administrator, even if that advice is inaccurate. In the present case, however, the Defendant cites a commercial handbook and the absence of significant precedent as ground for invoking § 259(a). Although such factors may be relevant to the Court's consideration of liquidated damages or "willful violation" damages, they are not appropriate considerations under § 259(a), which only protects an employer's reliance upon the Administrator's interpretation of the FLSA.

Even construing the evidence and all reasonable inferences, in a light most favorable to the Defendant[4], the Court finds no genuine issue of material fact with respect to its invocation of § 259(a) to avoid damages. Given that the administrative rulings upon which the Defendant relies do not address its particular circumstances, no rational trier of fact could find § 259(a) applicable in the present case. Accordingly, the Court overrules the Defendant's Motion for Summary Judgment (Doc. # 46) on the damages issue, insofar as it addresses § 259(a). Having found no genuine issue of material fact on the issue, even with the evidence construed most strongly in the Defendant's favor, the Court sustains the Plaintiff's Motion for Summary Judgment (Doc. # 49) to the extent it addresses the § 259(a) affirmative defense.

B. *Willful Violation of the FLSA*

■ For "ordinary" violations of the FLSA, an employer's exposure to liability for unpaid overtime compensation is limited to two years. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988). When an employer's violation is "willful," however, an employee may recover back pay for a period of three years prior to filing his lawsuit. *Id.; E.E.O.C. v. City of Detroit Health Dept.*, 920 F.2d 355, 357 (6th Cir.1990). The Plaintiff bears the burden of proving that the Defendant's FLSA violation was "willful." *McLaughlin*, 486 U.S. at 135, 108 S.Ct. 1677. In order to meet his burden, the Plaintiff must demonstrate that the Defendant either knew its conduct violated the FLSA, or showed reckless disregard about the matter. *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 967 (6th Cir.1991), quoting *Richland Shoe*, 486 U.S. at 133, 108 S.Ct. 1677.

In support of its Motion for Summary Judgment on the "willfulness" issue, the Defendant relies upon an affidavit from retired Springfield Fire Chief Donald J. Lee, as well as exhibits cited in his affidavit and attached thereto. Lee avers that his responsibilities included ensuring that Fire Division employees received compensation as required by law. (Lee Affidavit at ¶ 3). He also avers that he consulted the Fair Labor Standards Act, various handbooks and publications, collective bargaining agreements between the City and the firefighters' union, the union's Fair Labor Standard Act manual, the City's General Order No. 2-86, and letter rulings from the Administrator of the Wage and Hour Division of the Department of Labor. (*Id.* at ¶¶ 3–10). Additionally, Lee avers that from 1986 until the filing of the Plaintiff's Complaint, he never became aware of any letter ruling, law, or regulation "which

---

4. When ruling upon the Defendant's Motion for Summary Judgment, the Court ordinarily would construe the evidence in a light most favorable to the Plaintiff. In the present case, however, both parties have moved for summary judgment on the Defendant's § 259(a) affirmative defense. The Defendant has failed to create a genuine issue of material fact as to the statute's applicability, an issue upon which it has the burden (*see* 29 U.S.C. § 259(a), noting that the employer must "plead and prove" the statute's applicability), even with the evidence construed in its favor. Therefore, the Defendant's Motion for Summary Judgment fails, and the Defendant also fails to defeat the Plaintiff's Motion for Summary Judgment on the § 259(a) issue. Given this conclusion, the Court need not conduct an analysis of the issue construing the evidence in a light most favorable to the Plaintiff.

directly or indirectly stated that fully-trained uniformed firefighters assigned to a dispatch center were not Section 207(k)' exempt." (*Id.* at ¶ 11). Lee also states that counsel continued to advise him, even after the Plaintiff filed his Complaint, that the City was not liable for overtime compensation in the present case. (*Id.*). Furthermore, Lee avers that he cannot recall any allegation by the firefighters' union that the City was not complying with the FLSA by its compensation of firefighter-dispatchers. (*Id.* at ¶ 12). Finally, he avers that he attended numerous state, regional, and national seminars, and never heard any suggestion that § 207(k)'s partial overtime exemption does not apply to firefighter-dispatchers. (*Id.* at 13).

In opposition to the Defendant's Motion for Summary Judgment on the "willfulness" issue, the Plaintiff contends an employer's conduct is "willful" when it knows that its actions possibly might violate the FLSA. The Plaintiff also insists that a willful violation occurs whenever an employer realizes that the FLSA might apply, or that the Act is "in the picture." The Plaintiff also argues that the issue of whether an employer willfully violated the FLSA may not be decided on summary judgment.

The Court finds the Plaintiff's arguments absolutely meritless. In *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988), the United States Supreme Court expressly rejected the "willfulness" standard advanced by the Plaintiff. In so doing, the Court identified by name and explicitly rejected *Brennan v. Heard*, 491 F.2d 1 (5th Cir.1974), and *Coleman v. Jiffy June Farms, Inc.*, 458 F.2d 1139, 1142 (5th Cir. 1971), both of which the Plaintiff urges the Court to follow in the present case. The *McLaughlin* Court recognized that "the *Jiffy June* standard of willfulness-a standard that merely requires that an employer knew that the FLSA 'was in the picture'-virtually obliterates the distinction between willful and nonwillful violations." *McLaughlin*, 486 U.S. at 132–133, 108 S.Ct. 1677; *see also Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 128, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985) (noting that "it would be virtually impossible for an employer to show that he was unaware of the Act and its potential applicability").

■ As noted above, the proper test for application of the three-year limitations period for willful violations of the FLSA is "whether the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute...." *McLaughlin*, 486 U.S. at 133, 108 S.Ct. 1677. This standard requires more than a showing of negligence on the employer's part. *Id.* Even if an employer acts unreasonably, but not recklessly, in determining its legal obligation under the FLSA, its conduct does not satisfy the "willfulness" standard. *Id.* at n. 13, 108 S.Ct. 1677. The Plaintiff's Memorandum opposing summary judgment cites no evidence suggesting that the Defendant knew its conduct violated the FLSA or acted recklessly in that regard. Rather, the Plaintiff contends the Defendant is not entitled to summary judgment because it knew the FLSA was "in the picture." As a matter of law, the Plaintiff's argument is insufficient to withstand the Defendant's Motion for Summary Judgment. In his Memorandum opposing summary judgment, the Plaintiff cites no evidence from which the Court could conclude, even construing that evidence most strongly in the Plaintiff's favor, that a genuine issue of material fact exists on the "willfulness" issue.[5]

■ As noted above, however, after responding to the Defendant's Motion, the

---

5. Contrary to the Plaintiff's argument, a court may determine whether an employer willfully violated the FLSA, as a matter of law, through summary judgment. *See Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 967 (6th Cir.1991) ("From our review of the record in this case, we hold that there is no genuine issue of material fact as to whether defendants' violation of the FLSA was willful.").

Plaintiff filed his own Motion for Summary Judgment (Doc. # 49) addressing, *inter alia,* the Defendant's alleged "willful" violation of the FLSA. The Motion consists of an affidavit from Schneider and copies of several documents he obtained from the firefighters' union hall shortly after he responded to the Defendant's Motion for Summary Judgment. In his affidavit, the Plaintiff avers that, after discovering the documents, he spoke with Captain Russell Bayless of the Springfield Fire Department. (Schneider Affidavit at ¶ 3). According to the Plaintiff, Bayless stated that he had attended a FLSA seminar in 1985 or 1986, and upon his return he (Bayless) had informed his supervisors that the Act " 'was going to change everything about the way things were being done....' " (*Id.*). The Plaintiff also avers that Bayless, who was a fire lieutenant in 1985 and 1986, told him that the supervisors were " 'aghast' " at what he had reported. (*Id.*).

In response, the Defendant argues that Bayless' purported statements may not be considered because they are hearsay. (Doc. # 50 at 3). The Plaintiff counters by arguing that the statements are admissions of management-level employees, thereby qualifying as admissible admissions of a party opponent under Fed. R.Evid. 801(d)(2)(D). Assuming that Bayless' statements would qualify as admissible admissions, however, the Court finds them insufficient to create a genuine issue of material fact on the "willfulness" issue. Bayless' purported statements from the mid–1980s are too vague to support the Plaintiff's Motion or to avoid summary judgment in the Defendant's favor. Even if Bayless told his supervisors that the FLSA would change things, and they were aghast, these facts are insufficient to sup-

port a reasonable inference that the Defendant willfully violated the Act by treating the Plaintiff as § 207(k) exempt some years later. Furthermore, even if a trier of fact somehow inferred that Bayless' ambiguous comment specifically related to the Defendant's overtime compensation of firefighter-dispatchers, retired Fire Chief Lee has averred that he consulted the Fair Labor Standards Act, letter rulings, legal counsel, and other publications in an effort to comply with the Act. In light of these inquiries, the Court finds no genuine issue of material fact about whether the Defendant willfully violated the FLSA. No reasonable trier of fact could conclude, based upon Bayless' isolated and ambiguous statements, that the Defendant knew, or displayed reckless disregard about, whether its compensation of firefighter-dispatchers violated the FLSA.

The various documents identified in the Plaintiff's affidavit are even less persuasive.[6] *First,* the Plaintiff presents a copy of what he has identified as a 1986 letter from Gary Sherman, a research assistant for the firefighters' union, to Dale Dyar, president of the local firefighters' union. (Doc. # 49 at Exh. B). Assuming, for the moment, that the letter is admissible, it does nothing to support the Plaintiff's "willfulness" argument. The Plaintiff argues that the letter shows the Defendant's awareness that the FLSA might be "in the picture." (Doc. # 51 at 3–4). Unfortunately for the Plaintiff, as previously indicated however, such awareness is insufficient to establish a willful violation of the FLSA. *McLaughlin,* 486 U.S. at 132–133, 108 S.Ct. 1677. Furthermore, the Plaintiff contends that Dyar, the letter's recipient, was promoted to a managerial position as

---

**6.** The Defendant alleges in its Memorandum opposing the Plaintiff's Motion for Summary Judgment that some of these documents are the subject of a pending Motion to Strike. (Doc. # 50 at 2–3). The Court has reviewed the docket in this litigation, however, and it has discovered no Motion to Strike filed by the Defendant. In any event, for the reasons set forth in this Opinion, the documents that

the Defendant challenges do not support the Plaintiff's arguments. If anything, they provide support for the Defendant's position. Consequently, the Defendant is not prejudiced by their inclusion in the record. The only document that may support the Plaintiff's arguments, a 1985 FLSA Handbook page, does not appear to be the subject of the Defendant's undiscovered Motion to Strike.

a lieutenant with the Springfield Fire Department "at or around the time of the letter." (Doc. # 49 at 3). None of the evidentiary materials submitted with the Plaintiff's Motion substantiates that claim, which the Plaintiff apparently makes to suggest that Dyar's knowledge should be imputed to the City. More importantly, on the whole, the letter supports the *Defendant's* belief that firefighter-dispatchers were covered by § 207(k)'s partial overtime exemption. The letter writer recognized that the "distinction between a civilian dispatcher and a fire fighter acting in the capacity of a dispatcher is not clear in the law," but expressed his opinion that firefighters who act solely as dispatchers would be covered by § 207(k).

*Second,* the Plaintiff presents handwritten notes that he identifies as having been drafted by Dyar. (Doc. # 49 at Exh. C). The Plaintiff stresses the following portion of the notes: "Section 7–k: 20% or less in actual firefighting generally associated with executive positions. Relates to certain exemptions from FLSA." The Plaintiff then admits his inability to swear in an affidavit that the notes are in Dyar's handwriting. Given the Plaintiff's inability to identify the author of the notes, the Court will not consider them. In any event, the Court would conclude that the cryptic sentence does not create a genuine issue of material fact with respect to a willful violation of the FLSA.

*Third,* the Plaintiff relies upon a "Special Notice" from the Springfield Fire Chief to "All Personnel." (Doc. # 49 at Exh. D). The notice highlights the topics discussed at an April 24, 1986, labor management meeting. In relevant part, it states: *"Fair Labor Standards Act*—Discussion was held in reference to 24–hour Fire Dispatchers being covered in F.L.S.A. 24–hour shift overtime. Both Management and Labor are satisfied with status quo." Once again, this document appears

to support the Defendant's belief that it was not violating the FLSA. The notice establishes that the Defendant recognized and discussed the FLSA's impact on firefighter-dispatchers. It also reflects that the Defendant and the firefighters' union *both* were satisfied with the "status quo." The notice provides absolutely no support for the Plaintiff's argument that the Defendant willfully violated the FLSA.

*Fourth,* the Plaintiff presents what he identifies as a page from a commercial 1985 FLSA Handbook. (Doc. # 49 at Exh. E). In its Motion for Summary Judgment, the Defendant has cited the Handbook, published by the Thompson Publishing Group, as one of the publications retired Fire Chief Donald J. Lee periodically consulted with respect to FLSA compliance issues. In his Motion, however, the Plaintiff notes that the Handbook page attached to the Defendant's Motion (Doc. # 46) as Exhibit D bears the date February, 1997. The Plaintiff avers that his version, bearing the date November, 1985, is the version that the Defendant actually would have reviewed to ensure FLSA compliance. Assuming, arguendo, for present purposes, that the Plaintiff is correct, an issue the Defendant strenuously contests,[7] the Court finds no genuine issue of material fact about the willfulness of the Defendant's FLSA violation. The 1985 Handbook page cited by the Plaintiff is in question-and-answer format. In relevant part, it states:

**"17. If a firefighter is trained as a firefighter but does exclusively dispatch work, would this person be eligible for the section 7(k) overtime measurement?**

Generally, the FLSA regulations do not regard dispatchers as employees in fire protection activities for the purpose of section 7(k). However, it the dispatcher were also a trained firefighter

---

7. The Court will provide a detailed discussion of the conflicting Handbook pages, and the Defendant's arguments, *infra,* in its analysis

of the Defendant's liquidated damages argument.

and had the legal authority and responsibility to fight a fire in an emergency or other circumstance, then the employee could be considered an employee in fire protection activities and covered under section 7(k). *However, since he spends over 20% of his time in non-firefighting activity (dispatching), he would not appear to qualify for the 7(k) overtime measurement.*"

(Doc. # 49 at Exh. E) (Emphasis added).

The Plaintiff argues that the last sentence of this answer, along with the other evidence cited above, mandates the entry of summary judgment in its favor. As the Court has explained, however, none of the other evidence provides *any* support for the Plaintiff's willful violation allegation. If anything, the other evidence supports the Defendant's position. Furthermore, the lone sentence from the commercial treatise does not constitute an authoritative judicial, legislative, or administrative pronouncement that firefighter-dispatchers *do not* qualify for the 29 U.S.C. § 207(k) partial overtime exemption. In fact, the sentence does not provide a definitive answer at all. As a result, no rational trier of fact could conclude that the Defendant *knew*, based upon the sentence, that its conduct violated the FLSA.

■ The critical inquiry, then, is whether the sentence is sufficient to create a genuine issue of material fact as to whether the Defendant acted recklessly after consulting the Handbook.[8] The passage at issue certainly should have alerted the Defendant that its overtime compensation of firefighter-dispatchers very well could violate the FLSA. Armed with such information, a prudent employer reasonably might seek a letter ruling from the Administrator of the Wage and Hour Division. A mere lack of prudence, however, is insufficient to support a finding of willfulness under the FLSA. *Cf. McLaughlin*, 486 U.S. at 133, 108 S.Ct. 1677 (recognizing that employer

negligence will not justify a finding of willfulness).

Moreover, if an employer consulted *only* the 1985 FLSA Handbook, and then continued to treat firefighter-dispatchers as § 207(k) exempt, its conduct might qualify as reckless. In the present case, however, retired Fire Chief Lee avers that he reviewed a variety of resources, including two letter rulings from the Administrator of the Hour and Wage Division. (Lee Affidavit at ¶¶ 4–10). Although the Court has found the letter rulings and other documents not directly applicable to the situation at hand, inferentially they provide limited support for the Defendant's position. Additionally, Lee avers that counsel continued to advise, even after the Plaintiff filed his lawsuit, that the City was not liable under the present facts. (*Id.* at ¶ 11). Furthermore, Lee notes that from 1986 to 1996, the local firefighters' union never raised the issue of firefighter-dispatcher compensation during collective bargaining negotiations. (*Id.* at ¶ 12). Finally, Lee avers that, based upon his attendance at numerous seminars and meetings, "it appeared to me that over the years numerous fire departments and divisions continued to carry forward long-standing customs and practices of assigning fully-trained uniformed firefighters to dispatching duties without treating them as forty-hour work week employees. I heard of no such employer who was ever sued or investigated by an employee of the Department of Labor regarding that issue." (*Id.* at ¶ 13).

Despite the foregoing averments, a trier of fact still might conclude that the Defendant acted unreasonably by failing to obtain a definitive opinion regarding § 207(k)'s applicability to firefighter-dispatchers. Consequently, if a "reasonableness" standard applied, the Court would find a genuine issue of material fact precluding summary judgment for either par-

---

**8.** Once again, the Court assumes *arguendo*, for present purposes, that the Defendant consulted the 1985 FLSA Handbook in order to

ensure FLSA compliance. The Court will address this issue more fully, *infra*, in its analysis of the liquidated damages issue.

ty. Unfortunately for the Plaintiff, however, such a standard does not apply. If an employer acts unreasonably, but not recklessly, in determining its legal obligations under the FLSA, its violation is not "willful." *McLaughlin*, 486 U.S. at 135 n. 13, 108 S.Ct. 1677.

Based upon the evidence before the Court, a trier of fact could conclude, at most, that the Defendant acted unreasonably in determining its obligations under the FLSA. In short, the evidence before the Court does not reveal a genuine issue of material fact about whether the Defendant's failure to pay the Plaintiff proper overtime compensation stemmed from willful non-compliance with the Act. Accordingly, the Court sustains the Defendant's Motion for Summary Judgment (Doc. # 46), insofar as it is directed toward the "willful violation" issue. The FLSA's two-year limitations period, rather than the three-year period, applies to the Plaintiff's claim for unpaid overtime compensation. Given this conclusion, the Court overrules the Plaintiff's Motion for Summary Judgment (Doc. # 49), insofar as it is directed toward the "willful violation" issue and application of the corresponding three-year statute of limitations.

C. *Liquidated Damages under 29 U.S.C. § 260*

 In addition to paying past-due overtime compensation, an employer who violates the FLSA ordinarily must pay an equal amount as liquidated damages. 29 U.S.C. § 216(b). If an employer pleads and proves that the act or omission giving rise to FLSA liability was done in good faith, and if it had reasonable grounds for believing that its conduct did not violate the Act, then a court may, in its discretion, decline to award liquidated damages. *E.E.O.C. v. City of Detroit Health Dept.*, 920 F.2d 355, 357 (6th Cir. 1990) (citing 29 U.S.C. § 260). Even

when an employer meets this burden, however, a court nevertheless "may award full liquidated damages equal to, and in addition to, the unpaid back wages." *McClanahan v. Mathews*, 440 F.2d 320, 323 (6th Cir.1971). Alternatively, even though an employer meets its burden, a court retains the discretion to award liquidated damages in some amount less than the plaintiff's total unpaid overtime compensation. *Featsent v. City of Youngstown*, 70 F.3d 900, 906 (6th Cir.1995). But when an employer lacks good faith and reasonable grounds for believing that its conduct did not violate the Act, a District Court must award liquidated damages. *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 967 (6th Cir.1991).

 In the present case, the Court cannot determine, as a matter of law, whether the Defendant acted in good faith and with reasonable grounds for believing that its conduct did not violate the FLSA. Furthermore, based upon the evidence before it, the Court cannot determine whether the Defendant should be required to pay some amount of liquidated damages, even if it does establish the good faith affirmative defense provided by 29 U.S.C. § 260.

Construing the evidence in a light most favorable to the Defendant, a reasonable trier of fact might conclude that it acted in good faith, and with reasonable grounds for believing that its conduct conformed with the FLSA. In reaching this conclusion, the Court first notes retired Fire Chief Donald Lee's averments that he attempted to comply with the FLSA by consulting the Act itself, various collective bargaining agreements between the City and the firefighters' union, assorted employment law handbooks and manuals, and letter rulings from the Administrator of the Hour and Wage Division of the Department of Labor.[9] (Lee Affidavit at ¶¶ 4–10). Additionally, Lee avers that he

---

9. Although Lee's reliance on these resources is insufficient to absolve the City from all liability under the absolute immunity provi-

sion of 29 U.S.C. § 259(a), it nevertheless may support a finding that the Defendant acted in good faith and with a reasonable

attended numerous meetings and seminars addressing, among other things, the FLSA. (*Id.* at ¶ 13). Lee does not recall receiving any information about § 207(k)'s partial overtime exemption not applying to firefighter-dispatchers. (*Id.*). To the contrary, he avers that many fire departments utilized firefighters as dispatchers without treating them as forty-hour employees. (*Id.*). According to Lee, the City and the firefighters' union also negotiated several collective bargaining agreements, without the union ever mentioning the City's potential non-compliance with the FLSA. (*Id.* at ¶ 12). Finally, Lee avers that "even after the filing of this pending lawsuit, advice of counsel continued to be that the City was not liable for overtime compensation under the facts and circumstances pled in the Plaintiff's complaint." (*Id.* at ¶ 11). A trier of fact could infer from this statement that counsel provided the same advice *before* the Plaintiff filed his lawsuit, and reliance upon an attorney's advice, or even an attorney's silence, may insulate an employer from liability for liquidated damages. *Featsent v. City of Youngstown,* 70 F.3d 900, 906–907 (6th Cir.1995) ("There is no evidence that at any time the City's attorney advised the City that the Agreement's method of calculating overtime compensation violated the FLSA. From its attorney's silence, the City was entitled to the reasonable belief that the Agreement did not violate the law, including the FLSA."); *Horan v. King County,* 740 F.Supp. 1471, 1482 (W.D.Wash.1990).

Construed most strongly in the Defendant's favor, the foregoing evidence is sufficient to create a genuine issue of material fact and defeat the Plaintiff's Motion for Summary Judgment on the liquidated damages issue. Based upon this evidence, a trier of fact could conclude that the City made a reasonable inquiry into its FLSA obligations, acting in good faith and possessing reasonable grounds for believing that it had complied with the FLSA.[10]

Viewed most strongly in the Plaintiff's favor, however, the record contains evidence and inferences from which a rational trier of fact might conclude that the City failed to act in good faith and with a reasonable belief that no FLSA violation existed. The Defendant contends, through Lee's affidavit, that it attempted to stay abreast of the FLSA's requirements, but the record contains little evidence suggesting that it ever made a specific inquiry to anyone about whether firefighter-dispatchers failed to qualify for § 207(k)'s partial overtime exemption, because they spend more than 20 percent of their time performing "non-exempt" work. As noted above, the Court previously found the Defendant liable to the Plaintiff based, in part, upon 29 C.F.R. § 553.212, which excludes from § 207(k) firefighters who spend more than 20 percent of their time performing "non-exempt" work.[11] Significantly, one of the reference materials purportedly relied upon by retired Fire Chief

basis for believing that it complied with the FLSA. Although the Administrator's letter rulings did not address the Defendant's particular circumstances, the Court cannot say, as a matter of law, the it acted unreasonably or in bad faith by inferring from them that it properly compensated its firefighter-dispatchers. Likewise, as noted above, reliance upon advice from sources other than the Administrator will not support a § 259(a) affirmative defense, but the Defendant's review of the other written resources supports its argument that it acted in good faith and with a reasonable basis for its actions.

**10.** Although the Defendant never sought its own letter ruling from the Administrator of the Hour and Wage Division, the Court finds

that failure not dispositive with respect to the Defendant's good faith and reasonable belief under 29 U.S.C. § 260. The Defendant's failure to obtain a letter ruling addressing its particular circumstances, or to rely upon an existing letter ruling directly on point, precludes it from utilizing the "absolute" defense of § 259(a). Under § 260, however, the Defendant only must act in good faith and with *reasonable* grounds for believing that its conduct conformed with the FLSA.

**11.** The other basis for the Court's holding was that the Plaintiff did not work as a dispatcher for purposes of training or familiarization, or for reasons of injury, illness, or infirmity. The Court concluded that a firefighter, performing the tasks of a dispatcher, could come

Donald J. Lee to support the City's liquidated damages defense is a FLSA Handbook published by the Thompson Publishing Group. (Lee Affidavit at ¶ 8). Lee, who served as the Defendant's Fire Chief or Assistant Fire Chief from 1986 until his retirement in 1997, avers that he maintained the Handbook in his office and "consulted it regularly." (*Id.*). Attached to the Plaintiff's Motion for Summary Judgment (Doc. # 49) is an authenticated page from the November, 1985, version of the FLSA Handbook. As noted above, it includes the following question-and-answer passage:

> "**17. If a firefighter is trained as a firefighter but does exclusively dispatch work, would this person be eligible for the section 7(k) overtime measurement?**
>
> Generally, the FLSA regulations do not regard dispatchers as employees in fire protection activities for the purpose of section 7(k). However, it the dispatcher were also a trained firefighter and had the legal authority and responsibility to fight a fire in an emergency or other circumstance, then the employee could be considered an employee in fire protection activities and covered under section 7(k). *However, since he spends over 20% of his time in non-firefighting activity (dispatching), he would not appear to qualify for the 7(k) overtime measurement.*"

(Doc. # 49 at Exh. E (Emphasis added)).

If Lee consulted this version of the FLSA Handbook,[12] a trier of fact could conclude that, despite the Defendant's general attempts to comply with the Act, its failure ever to inquire specifically about the 20 percent limitation was not objectively reasonable. *Cf. Reich v. Lapatisserie,* 19 F.3d 1434, 1994 WL 102956 (6th Cir. March 25, 1994) (unpublished), quoting *Brock v. Wilamowsky,* 833 F.2d 11, 19 (2d Cir.1987) ("At the very least, to avoid the assessment of liquidated damages, a defendant must show 'an honest intention to ascertain what the Act requires and to comply with it.' "). Assuming, arguendo, that the Defendant knew dispatching likely would be considered a non-exempt activity, this fact would militate against the Defendant's claim that it acted in good faith, with a *reasonable* belief that its conduct conformed with the FLSA. Absent a specific inquiry by the Defendant into § 207(k)'s applicability, a trier of fact could find the Defendant's belief unreasonable.

In opposition to this conclusion, the Defendant makes two arguments. *First,* it contends the 1985 version of the FLSA Handbook cited by the Plaintiff was amended in 1988, and the last sentence of question-and-answer number 17 was deleted. In support of this assertion, the Defendant has provided the Court with an unauthenticated fax transmission, purportedly from a representative of the Thompson Publishing Group. (Doc. # 50 at Exh. B). This unauthenticated evidence may not be considered by the Court. The only authenticated versions of the FLSA Hand-

within the FLSA exemption for an "employee engaged in fire protection activities" only if he had been assigned his position for one of the foregoing reasons. (*See* Doc. # 23 at 15–18).

**12.** The version of the question-and-answer section attached to the Defendant's Motion for Summary Judgment is from February, 1997, and it does not include the last sentence quoted above. The sentence is significant, because if Lee was aware of its existence, then the Defendant had actual notice of one basis for the Court's ruling. Such a fact is insufficient to render the Defendant's conduct a willful violation of the FLSA (see analysis *supra* ). But the City's failure ever to inquire specifically about the 20 percent limitation's applicability would be relevant to whether it acted in good faith and with an *objectively reasonable* belief that it complied with the FLSA.

Furthermore, even if it can be said that the Defendant acted in reasonable good faith, despite its awareness of the 20 percent limitation's potential applicability, such awareness, and lack of further inquiry, would be relevant to the Court's discretionary imposition of liquidated damages.

book passage at issue are the 1985 version cited by the Plaintiff in his Motion for Summary Judgment, and the 1997 version cited by the Defendant in its Motion. The 1985 version contains the sentence at issue, and the 1997 version does not. Given these facts, the Court cannot determine, as a matter of law, which version Lee consulted or when the key sentence was deleted. This factual dispute simply cannot be resolved upon summary judgment, based upon the evidence presently before the Court.

*Second,* the Defendant argues that the 1985 version of the FLSA Handbook page is irrelevant to the present litigation. In support, it notes that the Plaintiff worked as a firefighter-dispatcher from approximately 1993 through 1996. The Defendant then claims that the Handbook was amended in 1988, and the sentence at issue was deleted. As a result, it argues that "[w]hatever some prior version of a published learned treatise said more than ten years ago, where it has been amended in the interim, and long before the Plaintiff brought his cause of action or provided dispatching services within the Fire Division, is not germane to his pending claims." (Doc. # 50 at 9–10). The Court notes once again, however, that the Defendant's fax transmission, which indicates a 1988 amendment to the Handbook's language, is not properly before the Court. Furthermore, the Court cannot agree that the sentence at issue is irrelevant, even if it was amended prior to the Plaintiff's employment as a firefighter-dispatcher. In support of the Defendant's Motion for Summary Judgment, Lee avers that he consulted a number of resources, including some dating from 1986 or shortly thereafter, to reach the conclusion that the City was in compliance with the FLSA. He cites the various resources, which were published prior to the Plaintiff's employment, to support the Defendant's claim that it had no reason to suspect its compensation system violated the FLSA. However, if Lee consulted the 1985 FLSA handbook prior to its amendment (an issue the Court cannot determine on summary judgment), that fact would constitute relevant evidence contrary to the Defendant's argument.

Finally, even assuming arguendo that the Defendant did act in good faith and with an objectively reasonable belief in the propriety of its actions, the Court cannot say, based upon the record before it, that a total denial of liquidated damages would be appropriate. Even when an employer meets its burden, a court "may award full liquidated damages equal to, and in addition to, the unpaid back wages." *McClanahan v. Mathews,* 440 F.2d 320, 323 (6th Cir.1971). A court also retains the discretion to award liquidated damages less than a plaintiff's total unpaid overtime compensation. *Featsent v. City of Youngstown,* 70 F.3d 900, 906 (6th Cir.1995). Without the opportunity to hear testimony describing, with particularity, the City's efforts to comply with the FLSA, the Court cannot exercise its discretion judiciously-assuming, of course, that the Defendant first establishes its good faith reasonableness, thereby allowing the Court to exercise its discretion at all. *See Dole v. Elliott Travel & Tours, Inc.,* 942 F.2d 962, 967 (6th Cir. 1991) (recognizing that when an employer lacks good faith and reasonable grounds for believing that its conduct did not violate the FLSA, a District Court must award liquidated damages in the full amount).

For the foregoing reasons, the Court overrules the Defendant's Motion for Summary Judgment (Doc. # 46), and the Plaintiff's Motion for Summary Judgment (Doc. # 49), insofar as the Motions are directed toward the liquidated damages issue.

### D. *Plaintiff's Request for Attorney's Fees and Sanctions*

In its Motion for Summary Judgment (Doc. # 49), the Plaintiff also seeks attorney's fees and sanctions against the Defendant. The Plaintiff has provided no evidence, however, setting forth the attor-

ney's fees that he has incurred. In any event, the Court will consider the issue of appropriate attorney's fees at the conclusion of this litigation. Accordingly, the Plaintiff's request for attorney's fees is overruled, without prejudice to renewal.

Finally, the Plaintiff seeks discovery sanctions against the Defendant. In support of his request, the Plaintiff stresses the Defendant's failure to provide him with copies of the various documents that the Plaintiff ultimately discovered on October 12, 1998, at the local firefighters' union hall. As noted above, those documents include: a purported letter from a union research assistant to Dale Dyar, the union president; handwritten notes from an unidentified author; and a 1986 Fire Division notice regarding a labor-management meeting. In response, the Defendant correctly points out that the Plaintiff discovered these documents at the union hall, and not in the Defendant's files, and he has presented no evidence indicating that the Defendant possessed these documents or knew of their existence. Additionally, the Defendant has provided the Court with an authenticated copy of the City's records retention and destruction policy, which indicates that the Fire Division notice would have been destroyed in 1989. Given the absence of any evidence suggesting that the Defendant possessed the documents at issue, at all or at the time when requested, the Court overrules the Plaintiff's request for discovery sanctions.

### IV. *Conclusion*

The Defendant's Motion for Summary Judgment (Doc. # 46) is SUSTAINED IN PART and OVERRULED IN PART. The Motion is sustained insofar as it addresses the Defendant's allegedly willful violation of the FLSA. The Motion is overruled to the extent it seeks summary judgment on the issue of 29 U.S.C. § 259(a)'s availability as an affirmative defense. The Motion also is overruled as it relates to the availability of the limited "good faith" affirmative defense under 29 U.S.C. § 260.

The Plaintiff's Motion for Summary Judgment (Doc. # 49) is SUSTAINED IN PART and OVERRULED IN PART. The Motion is sustained insofar as it addresses the Defendant's 29 U.S.C. § 259(a) affirmative defense. The Motion is overruled to the extent it addresses the Defendant's allegedly willful violation of the FLSA. The Motion also is overruled as it relates to the availability of the limited "good faith" affirmative defense provided by 29 U.S.C. § 260. The Plaintiff's request for attorney's fees is OVERRULED, without prejudice to renewal at the conclusion of this litigation. The Plaintiff's request for discovery sanctions is OVERRULED.